WIGGIN (RUSSELL v.). See Case No. 12,-165.

WIGGIN (SIMPSON v.). See Case No. 12,-887.

---

## Case No. 17,626.

WIGGINS et al. v. EUROPEAN & N. A. RY. CO. et al.

[1 Hask. 122.][1]

Circuit Court, D. Maine. Jan., 1868.

JURISDICTION OF FEDERAL COURTS—DIVERSE CITIZENSHIP—CORPORATE STOCK HELD IN TRUST—INJUNCTION.

1. The circuit court has jurisdiction in equity in the district of Maine over a respondent, a citizen of New Hampshire, found in this district and here served with process, when all the orators are citizens of other states, and all the other respondents are citizens of Maine.

2. Contractors for the building of a railroad, having stock of the railroad company as security for their contract. hold such stock for the common benefit of themselves and others whom they have admitted to share in their contract, and must deal with such stock accordingly.

3. The person holding such stock for the common interest of himself and associates, will be restrained in equity from voting it in violation of the orders of an executive committee, appointed by the joint owners of the stock under a contract by which it is held for the common good.

4. An injunction should only be granted in clear cases, and with extreme caution.

In equity. Bill, brought by Wiggins, a citizen of Massachusetts. Case, Thompson and Bradley, citizens of Pennsylvania, Dennison and Smith. citizens of Ohio, and Brink, a citizen of New Jersey, against the European and North American Railway Company, John A. Poor. Allen Haines. and Charles J. Gilman, citizens of Maine, and Geo. H. Pierce, a citizen of New Hampshire. found and served with process in Maine. praying for an injunction. The bill charges that one of the orators, Wiggins. is the owner of nine shares of the capital stock of the corporation. and that all of them have a joint interest with Pierce, one of the respondents.

[1] [Reported by Thomas Hawes Haskell, Esq.. and here reprinted by permission.]

in 574 shares of the stock of the corporation, standing on the company's books in the name of Pierce and one Blaisdell, who with Pierce's assent had assigned all his interest in the same to the orator Case, and that the orators' interest in that stock was eight-tenths, and Pierce's interest in it two-tenths.

Mr. Wiggins, pro se, and Josiah H. Drummond, for orators.

William L. Putnam and Phineas Barnes, for respondents.

FOX, District Judge. The bill avers, that in August, 1865, Pierce and Blaisdell contracted with the corporation to build the railroad from Bangor to St. John; that in March, 1866, a supplementary contract was entered into between said parties, by which it was agreed that the contractors should furnish the funds for building the road to Winn, and that as security therefor, the bonds of said company then in its possession and a major part of all the capital stock then issued should be put into the hands of contractors, and that 574 shares were so placed in their hands; that on the 8th of March, 1866, Pierce and Blaisdell, not being able to carry out their contract for building the road, transferred so much of the contract and of their interest therein, as would give and secure to Wiggins, Brink, Thompson, Bradley and Smith, each one-tenth, and to such other parties as might come in and join in the agreement two-tenths, and that under this agreement Case and Dennison did become parties and were also each entitled to one-tenth interest; that one Thos. W. Pierce was also to become interested to the extent of one-tenth of said contract, but that he parted with all his interest before any division of the profits of the contract could be made; that it was stipulated that one-tenth of the whole net profits should be first paid to Pierce and Blaisdell; that it was further stipulated, that this transfer should include and carry with it any assignment or agreement which Pierce and Blaisdell may have made to obtain control of the railway company and any other railroad connected with the enterprise of building and opening the same, and that these parties shall constitute a board of control, and manage all the affairs of said company, and may act by committee, agent or proxy, and may compose or select the board of directors; that said G. H. Pierce, Smith and George K. Jewett were appointed the executive committee of said parties and expended more than $300,000 on said road, and that Case was added to the executive committee.

It is further averred that John A. Poor, one of the respondents, and one of the directors of said corporation, on the 23d day of Dec. last, presented to said directors a petition signed by himself, Gilman, Haines and others, requesting the directors to call a meeting of the stockholders of said company at the office of the company on the 13th day of January, 1868, to act on certain matters specified in said petition, and that under a by-law of said corporation authorizing the directors to fix the time and place of all meetings of the stockholders except the annual meeting, the directors did call a meeting of said stockholders in all respects in accordance with said request of Poor and others, excepting that the time of the meeting was fixed for the second Tuesday of March, 1868, instead of Jan. 13th.

The bill then charges that Poor, Gilman, Pierce and Haines, conspiring and confederating together for the purpose of injuring and defrauding your orators and embarrassing the business of constructing said railway by holding a meeting of the stockholders of said company, and by means of said stock controlling said meeting, and so, by changing the officers or appointees of the company, and by the passage of votes and resolves hostile to the interests of your orators, hinder, obstruct, and delay the construction of said railway and the work now being performed by your orators, did, on the 24th of Dec., 1867, present a petition to one Wm. H. McCullis, a justice of the peace in Penobscot county, requesting him to call a meeting of said stockholders to be holden at the Bangor House on the 13th day of January, A. D. 1868, for the purposes stated in the former petition, and that thereupon said justice did issue his warrant directed to said Gilman, authorizing him to notify a meeting of said stockholders to be holden at the time and place and for the purposes set forth in said application, and that said Gilman has notified said meeting accordingly.

The bill denies the authority of said McCullis as a justice to call said meeting, avers that there is no occasion or necessity for the stockholders to take action on any of the matters set forth in said warrant, and alleges, that if said meeting is so held, the rights and interests of Wiggins as a stockholder of the nine shares, and of all the complainants as associate contractors for the construction of said road, will be endangered, greatly injured, or totally destroyed; that Pierce had no right to sign said petition as holder of said 574 shares, and has no right solely and alone to control said stock, or to vote on the same at any meeting of the stockholders of said company, because the complainants are interested, to the extent of 87 per cent. of said stock, and that the same cannot be controlled by Pierce or any other person, except the executive committee. The bill prays that the defendants may be enjoined from holding said meeting on the 13th of January, or attending the same, or acting therein, or attempting to act upon any of the matters named in the petition for the said call, and that Pierce may be ordered and declared to hold said stock in trust for the complainants and himself in the proportions they are

interested in said contract, and subject to the order and control of the executive committee, and may be restrained from voting on said stock at the meeting called for Jan. 13th, or any other meeting, excepting under the direction and order of the executive committee.

All the respondents, with the exception of Pierce, are citizens of Maine, and upon service being made upon him in this state, he appears specially by counsel and objects to the jurisdiction of this court over him in this proceeding. His objection is, that as the complainants are not citizens of this state, each and all of the respondents who hold a material interest in the matter must be joined to give the court jurisdiction, and that the fact, that he was here found and served with process, does not change the case and give jurisdiction he being a citizen of New Hampshire.

The 11th section of the judiciary act of 1789 [1 Stat. 78] gives this court jurisdiction, "when the suit is between a citizen of the state where the suit is brought and a citizen of another state." In Moffat v. Soley [Case No. 9,688] Mr. Justice Thompson says, "It was decided very early, 1806, by the supreme court of the United States in the case of Strawbridge v. Curtiss, 3 Cranch [7 U. S.] 267, that when the plaintiffs or defendants are numerous, or consisting of more than one person, each one must be capable of suing or being sued in the circuit court, in order to give the court jurisdiction, and this has been the uniform doctrine of the court ever since." The same doctrine is found in Craig v. Cummins [Case No. 3,331]; Taylor v. Cook [Id. 13,789]; Vattier v. Hinde, 7 Pet. [32 U. S.] 252.

With this construction of the act of 1789, as made by the supreme court and many of the circuit courts, the act of Feb. 28, 1839 [5 Stat. 321], was passed, which provides that, "when in any suit at law or equity commenced in any court of the United States, there shall be several defendants, any one of whom shall not be inhabitants of, or found within the district where the suit is brought, or shall not voluntarily appear thereto, it shall be lawful for the court to entertain jurisdiction, but the judgment or decree therein shall not prejudice parties not served with process, or not voluntarily appearing to answer."

What is the effect of this act upon the standing of Pierce before the court: has it changed the former law, and repealed the provision before cited from the act of 1789 so as to give the court jurisdiction over a party when service is made upon him, found in the district where the suit is pending? or was it intended to sustain the jurisdiction of the court over those who were properly before the court, and over whom it would have had jurisdiction, but for the non-joinder of other parties over whom the court had not jurisdiction.

In the case of Taylor v. Cook before cited, Judge McLean, speaking of this act, says: "The decisions under the act of 1789, caused great embarrassment to the proceedings in the circuit court. Unless they could act on the interest of the defendants properly before the court, without prejudice to those who were interested, and who did not reside within the district, they could exercise no jurisdiction in the case. To remedy this inconvenience, the act of Feb. 28, 1839, was passed. Unless required by the act of congress, it would not be necessary that either party should be a citizen of the state where the suit is brought. This provision of the act of 1789 is not repealed by the other act, but is modified. It enables a party who is sued with others, but who does not reside in the district, voluntarily to become a party to the suit, and when this is done, the court can exercise jurisdiction over him the same as if he were a citizen of the district, and process had been served on him."

In Commercial & R. R. Bank of Vicksburg v. Slocomb, 14 Pet. [39 U. S.] 64, this precise point is fully examined by Mr. Justice Barbour, and he says: "In the case of Strawbridge v. Curtiss [supra], the supreme court decided that where there are two or more joint plaintiffs and two or more joint defendants, each of the plaintiffs must be capable of suing each of the defendants, in the courts of the United States in order to support the jurisdiction. It was further contended, that all objection to the state of the parties in this case was obviated by the act of congress passed Feb. 28, 1839. We consider the true construction of this act to be this. The 11th section of the judiciary act, after having prescribed the jurisdiction of the circuit courts as it regards the character of the parties by way of personal exemption, declares, 'that no civil suit shall be brought before either of said courts, against an inhabitant of the United States, by any original process, in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ.' Under the operation of this clause many difficulties occurred in practice, in cases both in law and equity, in which, by the principles governing courts both of law and equity, it was necessary to join several defendants, some of whom were, and others were not, inhabitants of the district in which the suit is brought. The act of 1839 was intended to remove these difficulties, by providing that the persons not being inhabitants, or not found within the district, may either not be joined at all with those who were, or if joined, and they do not waive their personal exemption by a voluntary appearance, the court may go on to judgment or decree against the parties properly before it, as if the others had not been joined. But it did not contemplate a change in the jurisdiction of the courts as it regards the character of the parties as prescribed by the ju-

diciary act, and as expounded by this court; that is, that each of the plaintiffs must be capable of suing, and each of the defendants capable of being sued, which is not the case in this suit."

Such was the opinion of the supreme court of the United States in 1840. In 1844 the case of Louisville, C. & C. R. Co. v. Letson, 2 How. [43 U. S.] 497, was decided by the same court, in which an entirely different doctrine was declared. Mr. Justice Wayne, in the opinion of the court on p. 555, says: "After mature deliberation, we feel free to say that the Cases of Strawbridge and Curtiss and that of the Bank and Deveaux were carried too far, and that consequences and inferences have been argumentatively drawn from the reasoning employed in the latter, which ought not to be followed. The case of the Commercial & R. R. Bank of Vicksburg v. Slocomb [supra] was most reluctantly decided upon the mere authority of those cases. We do not think either of them maintainable upon the true principles of interpretation of the constitution and the laws of the United States. We remark too, that the Cases of Strawbridge and Curtiss and the Bank and Deveaux have never been satisfactory to the bar, and that they were not, especially the last, entirely satisfactory to the court that made them. They have been followed always most reluctantly and with dissatisfaction. By no one was the correctness of them more questioned than by the late chief justice who gave them. We think we may safely assert that a majority of the members of the court have at all times partaken of the same regret. * * * * We do not hesitate to say, that" the act of Feb. 28, 1839, "was passed exclusively with an intent to rid the courts of the decision in the case of Strawbridge v. Curtiss. We say that the act of 28th of February, 1839, enlarges the jurisdiction of the courts. We think, as was said in the case of Commercial & R. R. Bank of Vicksburg v. Slocomb, that this act was intended to remove the difficulties which occurred in practice, in cases both in law and equity, under that clause in the 11th section of the judiciary act, which declares 'that no civil suit shall be brought before either of said courts against an inhabitant of the United States, by any original process, in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ; but a re-examination of the entire section will not permit us to re-affirm what was said in that case, that the act did not contemplate a change in the jurisdiction of the courts as it regards the character of the parties.'"

The case of Strawbridge v. Curtiss being no longer recognized as correct, all the other decisions founded upon it fall with it, and I am compelled to hold that the court has jurisdiction over Pierce in this process.

What then are the rights of these complainants as against Pierce in and to the control of the 574 shares of stock. These shares were placed in the hands of Pierce and Blaisdell under the agreement of March 21, 1866, between them and the company, that they would build the road to Winn, furnishing the necessary funds, "provided the bonds of said company now in its possession, and a major part of the stock of the company, are put into the hands of said contractors and their associates, as security for the payment of the money which they shall advance for doing said work."

On the 8th day of May, 1866, Pierce and Blaisdell entered into an agreement with all of these complainants, except Dennison and Case, who afterwards by its terms were permitted to become parties, and the rights of the complainants and G. H. Pierce must depend on this contract and agreement. There is no evidence of any fraud having been practiced in relation to it, but all parties have recognized it and acted under it, and Blaisdell has since assigned all his interest in the contract for building the road to Case. By this agreement, and the subsequent transfer of Blaisdell, I hold that the complainants have become jointly interested with Pierce in the contract for building the road, and in their rights to this stock, whatever they may be, to the extent of 87 per cent. in common with Pierce. The language is quite emphatic, "The said Pierce and Blaisdell do by these presents * * sell, assign and transfer, so much of said contract and their interest therein to the said parties of the second part, as will give and secure to them the following interest and proportions to wit; to John H. Wiggins onetenth, &c. * * It is understood and agreed that the foregoing assignment of said contract shall include and carry with it any arrangement or agreement which said Pierce and Blaisdell may have made to obtain control of said railway, and also any other railroad connected with the enterprise of building and operating the same if the parties hereto desire. * * * * The said parties shall together constitute a board of control, and shall manage all the affairs of said company, and may act by committee, agents or proxy, and may compose or select the board of directors." This last paragraph is quite important, as in the call for this meeting of the stockholders, one article is in relation to election of directors.

A board of control, called the executive committee, has been selected, of which Pierce is a member, and this assignment has been assented to by the railroad company, and they have been recognized by the company as the contractors by a formal vote of the directors on their written application. Pierce and the complainants are therefore joint contractors for building this road, and he is bound by the terms of this agreement to hold and manage this stock for the common profit and benefit, to be governed and

controlled by the executive committee in relation to it, and to obey their directions as to the votes to be cast at the election of directors, and in all other respects to represent their wishes and instructions concerning this property, at all meetings of the stockholders. "Courts of equity will interfere, by way of injunction, to prevent a parner, during the continuance of the partnership, from doing any acts injurious thereto, or from violating the rights of the other parties, or his duty to them.". 1 Story, Eq. Jur. § 669.

An injunction is asked against the corporation and certain other stockholders to restrain them from holding the meeting of the stockholders on the 13th instant, on the ground that the meeting is not legally called, and that the complainants fear some action may take place at the meeting hostile to their interests. In their relation of contractors for building the road, I do not think they have the least pretence to ask for an injunction; and I understand, that at the hearing, this ground was abandoned, although the bill as drawn certainly presents this as one reason for the request.

The other stockholders have no interest in the nine shares of the capital stock held by Wiggin, and I do not think that they can invoke the aid of the ownership of that stock, and of Wiggin's rights as a stockholder to obtain the injunction: there should be a common joint relation on which all can stand to obtain a common benefit. It is therefore on account of their equitable rights in the stock standing in the name of Pierce and Blaisdell, upon which alone they can ask for the action of the court. They are not known on the records of the company as stockholders, and there may be grave doubts whether a corporation or its members are bound to know or acknowledge the rights of any other parties as stockholders at their meetings, than those who are so disclosed by the books and records of the corporation.

I am not quite certain that the meeting of Jan. 13th is not legally called, and that the magistrate was not authorized to issue his warrant. This depends upon the construction of the by-law of the corporation touching this matter, which is somewhat doubtful and uncertain, and which I do not think I should be justified in passing upon conclusively in this proceeding.

In speaking of the power of a court of equity in issuing injunctions, Mr. Justice Story says, "The exercise of it is attended with no small danger, both from its summary nature and its liability to abuse. It ought, therefore, to be guarded with extreme caution, and applied only in very clear cases." 2 Story, Eq. Jur. (10th Ed.) § 959b.

Mr. Justice Baldwin in Bonaparte v. Camden & A. R. Co. [Case No. 1,617], says, "There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or

more dangerous in a doubtful case, than the issuing an injunction; it is the strong arm of equity, that never ought to be extended unless to cases of great injury, where courts of law cannot afford an adequate, or commensurate remedy in damages. The right must be clear, the injury impending or threatened, so as to be averted only by the protecting preventive process of injunction; but that will not be awarded in doubtful cases, or new ones, not coming within well established principles; for if it issues erroneously, an irreparable injury is inflicted, for which there can be no redress, it being the act of the court, not of the party who prays for it. It will be refused till the courts are satisfied that the case before them is of a right about to be destroyed, irreparably injured, or great and lasting injury about to be done by an illegal act."

The case as presented does not satisfy me that it would be a proper exercise of my discretion to grant the injunction as prayed for against the other respondents, and it is therefore denied; but I think the complainants are entitled to an order restraining Pierce, his agents and proxies, from voting upon, or representing the 574 shares of stock standing in the name of Pierce and Blaisdell, excepting under the direction and order, or with the assent of a majority of the executive committee of the complainants. It is so ordered.