KENTON FURNACE RAILROAD & MANUF'G CO. *v.* MCALPIN and others.*

(*Circuit Court, S. D. Ohio.* November, 1880.)

1. UNITED STATES COURTS—PRACTICE—LAW AND EQUITY.

In the United States courts, legal and equitable claims cannot be joined in the same suit.

2. PLEADING AND PRACTICE—GENERAL ISSUE—EVIDENCE—CORPORATE EXISTENCE AND RIGHT TO SUE.

A plea in the nature of the general issue waives all proof of the due organization of the corporation and of its right to sue.

3. CORPORATIONS—AUTHORITY TO SUE.

In all cases which relate to its business, a corporation has a right to sue without a resolution of the board of directors authorizing suit.

4. CORPORATE POWER TO DECLARE STOCK FULLY PAID UP—ESTOPPEL.

A corporation, free from indebtedness, if acting in good faith, has the power, as between itself and its stockholders, (all the stockholders uniting therein,) to agree, in consideration of the surrender by the stockholders to it of accumulated profits and of the increased value of its property, to treat stock, upon which only 50 per cent. has been paid, as fully paid-up stock; and the corporation cannot afterwards, in its own behalf, or in behalf of subsequent creditors with notice, disturb such arrangement.

5. CORPORATIONS—NOTICE OF STOCKHOLDERS' MEETING—WAIVER—ESTOPPEL.

The notice of a meeting of stockholders prescribed by the charter or by-laws of a corporation may be waived by the stockholders; and, if each stockholder attends and participates in the action of the meeting, they are estopped from denying its legality for want of notice.

6. PARTNERSHIPS—POWER OF ONE PARTNER—STOCK IN CORPORATIONS.

One partner of a firm, which owns stock in a corporation as a part of its assets acquired in its regular business, has the power to represent that stock in all matters which relate to it in the usual management of such firm's business, and his action binds the firm; thus he may receive and waive notice of stockholders' meetings, vote at such meetings, etc.

7. SAME—DEATH OF PARTNER—POWER OF SURVIVING PARTNER—STOCK IN CORPORATIONS.

Upon the death of one member of a firm, the surviving partner has a right to the possession of its personal property, and to control and wind up its affairs, and to control and represent stock in a corporation which constituted part of the firm's assets, until its affairs are finally closed up.

*Reported by Messrs. Florien Giauque and J. C. Harper, of the Cincinnati bar.

8. SAME—ADMISSION OF NEW PARTNER.

And the admission of a new partner would not alter the rights and powers of the surviving partner, if such stock remained an asset of the old firm; and if it became an asset of the new firm, the principles of the sixth syllabus would apply to it.

9. CORPORATIONS DECLARING STOCK FULLY PAID UP—SUBSEQUENT CREDITORS—PARTNERSHIPS.

Creditors whose claims arose subsequent to April 14, 1874, and who were also stockholders and participated in the action of the stockholders' meeting of that date, are estopped to question the validity of such action; and the fact that the debts are owing to firms does not alter the rule: the stock also being held by the firm, the action and knowledge of one partner binding all.

10. SAME—SAME—EXISTING CREDITORS—REMEDY.

But as to debts existing at the time of that meeting and arrangement, such arrangement would be void; and *held*, (for the purposes of this case,) would not bar an action at law by the corporation against the stockholders to recover the unpaid 50 per cent. of their subscriptions; but *quære* as to the proper remedy.

11. PRACTICE—COLLATERAL ISSUES.

In a proceeding to collect unpaid stock subscriptions, the court will not pass upon the validity of a disputed claim against the corporation.

12. DEBTOR AND CREDITOR—APPLICATION OF PAYMENTS—RULE STATED.

13. SAME—SAME—INSTANCE.

If a person who is the financial manager of a corporation, and also a member of a firm to which it is indebted, and which continues to make advances to the corporation, receives the proceeds of the sales of the corporation and carries such receipts and advances into a general running account, such receipts not being applied in payment of any particular item of such account, the law will apply such receipts in satisfaction of the first item of the account, and so on to the end.

*Taft & Lloyd*, for plaintiff.

*Perry & Jenney*, for defendant.

SWING, D. J., (*charging jury*.) The petition in the case alleges that the plaintiff is a corporation, created by the laws of the state of Kentucky; that its capital stock was fixed at $100,000, divided into shares of $10 each; that the defendants subscribed to the capital stock of said company certain shares, to-wit: George W. McAlpin 875 shares, and John W. Ellis 2,250 shares; that said defendants have paid one-half of their capital stock, but that they have neglected and refused to pay the remaining one-half; that there is now due from the defendant McAlpin the sum of $4,375, and from the de-

fendant Ellis the sum of $11,250; that the real and personal property of the plaintiff has been sold and the proceeds applied to the payment of the debts of the company, but that the same has proved wholly insufficient, and that the corporation still owes about $35,000, and that it will require the full amount of the unpaid stock to satisfy the indebtedness.

The defendants, answering the petition, in substance say that the capital stock of said company was subscribed by R. Bell & Co., 5,000 shares; John W. Ellis, 2,250 shares; C. A. M. Damarin & Co., 1,875 shares; and by George W. McAlpin, 875 shares; that said company acquired and became the owners of a large and valuable tract of land in Kentucky, containing 6,202 acres, in which were valuable ores and mines, and upon which were valuable furnaces and works for the manufacture of iron; that they carried on the business with profit to the fourteenth day of April, 1874; that prior to that time they had paid 50 per cent. of the par value of said stock; that on said day the value of the property of said company, including its undivided accumulated profits, had increased and was in fact worth more than $100,000, the capital stock thereof, and to an amount in excess of the indebtedness of said company; that on that day, at a meeting of its stockholders duly held, at which meeting all of its capital stock was represented, it was by said stockholders unanimously resolved, in consideration of the said value of the property of said company, to make the capital stock of said company, and the same was so made, a fully paid-up stock; and the board of directors of said company were by said resolution directed to carry the same into effect by issuing new certificates of fully paid-up stock to the stockholders; and the said board of directors, at a meeting duly held on said day, by its resolution, duly and unanimously passed in conformity with the resolution of said stockholders, directed the president and secretary of plaintiff to issue new certificates of fully paid-up stock to the stockholders for the full amount by them subscribed as aforesaid on the surrender of their old certificates, and that new certificates of fully paid-up stock were accordingly issued.

Defendants deny that the indebtedness is about $32,000; aver that all of said indebtedness is owing to persons or firms who (or some members of whom) were stockholders on April 14, 1874, and their stock represented at said meeting; that all of the existing debt has been incurred since the passage of the resolution of April 14, 1874, and with knowledge of it; that by virtue of said resolution and of the premises the stock of said company became and was fully paid up, and that they are released from all liability on their subscriptions.

The reply denies that all of the indebtedness of the company is owing to persons who are stockholders, or firms, some of whose members are stockholders; that the property of the company was on April 14, 1874, worth $100,000; that all of the indebtedness existing at that date has been satisfied; that there was any legal stockholders' or directors' meeting on April 14, 1874, and the legality of the action then taken; alleges that said meeting was not held according to the charter and by-laws, was held without due notice, and that a quorum was not present, and that Damarin & Co. have since paid their stock in full.

This is an action purely at law. It possesses none of the elements of an equity proceeding. And while in the state courts, by virtue of our Code, law and equity may be joined in the same proceeding, it is not so in the federal courts. That question has been several times before the supreme court. In the case of *Thompson* v. *Railroad Companies*, 6 Wall. 137, the supreme court say: "The constitution of the United States and the acts of congress recognize and establish the distinction between law and equity. The remedies in the courts of the United States are, at common law or in equity, not according to the practice of state courts, but according to the principles of common law and equity as distinguished and defined in that country from which we derive our knowledge of these principles. And although the forms of proceedings and practice in the state courts shall have been adopted in the circuit courts of the United States, yet the adoption of the state practice must not be understood as confounding the principles of law and equity, nor as authorizing

legal and equitable claims to be blended together in one suit." So that this is purely an action at law brought by this corporation against these defendants.

It is objected by the defendants in the case that this action cannot be maintained by the plaintiff, for the reason that no proof has been offered to show that the plaintiff had any authority to institute the suit. The action is brought by the corporation for its own benefit against these defendants; the action relates to the business of the corporation solely. The defendant has filed in the case a plea or an answer in the nature of the general issue. He thereby waived all proof of the due organization of the company, and he also waived all question as to the right of the plaintiff to maintain the action. He cannot now call upon the plaintiff to furnish proof that it was authorized to bring the action. It was not necessary, in order to entitle the plaintiff to maintain this action, that the board of directors should have entered upon their journal any resolution to that effect. A corporation has a right to sue, in all cases which relate to its business, without any resolution by the board of directors authorizing or directing it to sue. It would be otherwise if the suit was brought in the name of the corporation solely for the use of somebody else. In that case it might be necessary, if such an action could be maintained at all, to show that there was authority for permitting the third party to use the name of the corporation. That is not this case. In Field on Corporations, 387: "At common law it is well settled that if, in a suit brought by a corporation, the defendant plead to the merits, he admitted the capacity of the defendant to sue; and that, if he merely made a general issue, it dispensed with the necessity of all proof of corporate existence and their right to sue. This was, however, held not to apply in case of a foreign corporation."

The plaintiff, therefore, under the state of pleadings as they exist, was not required to show that it had any authority to bring this action.

This brings me to the question as to the nature and character of the transaction of April 14, 1874. This meeting was held on April 14, 1874, as shown by the record of this com-

pany; and a corporation of this character, so far as its acts are concerned, speaks through the record of its proceedings. That record is, "A meeting of stockholders, Kenton Furnace Railroad Manufacturing Company, was held," etc., and then follows the election of directors. Then there is a record of a meeting of the board of directors, in which officers were elected. On the same day there was an adjourned meeting of the stockholders, at which Damarin, Ellis, and McAlpin were present, and at which the following resolution was adopted: "Whereas, the real estate belonging to the company is in fact of the value of $60,000; and, whereas, there is now on hand, undistributed, upwards of $15,000 of the surplus earnings of the company; and, whereas, the present capital stock of the company, issued and held by the stockholders, is but $50,-000, in which the real estate of the company is represented at but $25,000: Now, therefore, for the purpose of truly representing the value of the assets and property of the comany which constitutes its capital in the stock thereof, be it resolved, that the board of directors be and they are hereby instructed to cause to be issued certificates of capital stock to the additional amount of $50,000, making the aggregate issue $100,000, to be divided among the present stockholders in proportion to the amount held by each." On the same day, at an adjourned meeting of the board of directors, at which Ellis, Damarin, and McAlpin were present, the following resolution was adopted: "That the president and secretary are hereby instructed to issue new certificates for fully paid-up capital stock, namely, $100,000, in accordance with the resolution this day passed by the stockholders, and that the old certificates be returned and destroyed."

It is claimed that the evidence shows that by virtue of these two resolutions the officers issued to the several stockholders certificates, in pursuance of the provisions of these resolutions, for a fully paid-up stock. And it is claimed by the defendants that, this having been done, the plaintiff in this case, the corporation, is estopped from now maintaining this action against them, and compelling them, in the face of this action of the stockholders and of the board of directors and of the officers, to

pay the full amount of their capital stock, or the balance of 50 per cent. On the other hand, it is contended by the plaintiff that the stockholders, directors, and officers of the company had no power, under any circumstances, of the character set forth in these resolutions, to pass any such resolutions, and that the whole action, therefore, of the resolutions and of the issue of the stock is a mere nullity. If that be so, then, as a matter of course, the plaintiff in this case has a right to recover from each one of these defendants the full amount of the unpaid balance of their subscriptions to this stock.

There is a recital in this resolution that the property has greatly increased in value; that the real estate is worth at least $60,000, and that there was at least $15,000 of accumulated profits which were undistributed, and that for the reason of this increase in value of the real estate, and these accumulated profits which belonged to the stockholders, that they (all the stockholders) agreed among themselves that the company should retain these accumulated profits to which they were entitled, and that in addition to that, the value of the real estate having increased from $25,000 to $60,000, that would make the full amount of the unpaid 50 per cent. of the capital stock of the several subscribers.

It will be borne in mind that this transaction, as I am now speaking of it, was a transaction purely between the corporation and its stockholders. I have no doubt that the stockholders, where there were undistributed profits to which they were entitled, might agree to surrender to the corporation such accumulated profits, and, in consideration of such surrender and the increased value of its real estate, agree among themselves to treat the stock as fully paid up; and that the corporation, separate and distinct from the stockholders, would have a perfect right to accede to that agreement and to issue such stock. If it were between themselves only, I have no doubt that such a transaction would be entirely binding, if all the requirements of the law had been fulfilled. A corporation without any indebtedness, acting in good faith as between itself and its stockholders, could make such an arrangement. It was a matter wholly of their own concern;

nobody was interested in nor could be affected in any way by it but themselves. They would have had a right upon that day to have wound up the entire affairs of that corporation, and to have divided the property between themselves; and to say that they would not have a right to have treated their stock as paid up by a surrender of the accumulated profits to the company and taking in lieu of their old certificates new ones for fully—paid stock, is a doctrine to which I cannot subscribe. I am treating it, though, as a transaction entirely among themselves. I know the books say that the capital stock of a corporation is a trust fund; it is a sacred fund; it is a fund that cannot be frittered away—which cannot be fraudulently disposed of. But they say it is a trust fund for the payment of the creditors of the corporation first, and in the second place it is a trust fund for the benefit of the stockholders of the corporation. Be it so. But if there are no creditors, it then becomes only a trust fund for the benefit of all the stockholders in proportion to the amount which each one of them subscribed. It would be a strange doctrine if the stockholders themselves could not (all acting together) authorize as between themselves the directors to dispose of that property in anywise, if they saw proper to do so.

But it is said by the plaintiff that if this be so, still that meeting was not a valid meeting, for the reason that the forms which are prescribed by the act of incorporation had not been complied with, to-wit, it was a meeting without notice, and therefore was an illegal and void meeting.

The act of incorporation provides that they may elect directors at certain times, and if they should fail to elect them at such times they can do so by giving 30 days' notice; and it is contended by learned counsel for the plaintiff in the case that that provision in the charter cannot be waived, and, inasmuch as it is not contended in this case that there was in fact a compliance with that requisite of the charter, that the meeting was void. On the other hand, it is contended that while the charter itself, or the by-laws, or both, may provide that a meeting may be called upon certain no-

tice, that if all the parties who are interested in it, and all the parties who would have had a right to have received notice, without any such notice appeared at a meeting, and joined in its deliberations and discussions, that they are estopped from afterwards denying the legality of the meeting for the want of such notice.

I think that that is the law. I think that where stockholders who, under the provisions of a charter or under the provisions of the by-laws, have the right to have the requisite notice prescribed by either or by both, that that is a right that they may waive, and if each one of them attends and participates in the action of the meeting, they are estopped from denying the legality of that meeting for the want of notice. What is the purpose of the notice? What other purpose could there be, so far as they are interested in it, than that they should have an opportunity themselves of making a part and parcel of the meeting, taking part in its deliberations and actions; in other words, that they should have an opportunity of having a voice in whatever was done? That is the whole purpose of the notice. The public are not interested in this notice in any shape or form whatever. It is only stockholders who are interested, and to say that they may not estop that right by attending and participating in it, and may not estop themselves the right to deny its validity, would be to say that which I do not think in accordance with the theory and the rule of notice in cases of this character. And I think, while I am clear upon that proposition upon reason, that it is abundantly supported by authority.

In *Chamberlain* v. *Painesville, etc., R. Co.* 15 Ohio St. 225, I think the same principle is recognized. The fourth syllabus of the case is: "4. After the requisite amount of stock has been subscribed to authorize the stockholders to elect directors, it is not indispensable to an election that the notice for it should be given by the persons named in the certificate of incorporation. The validity of the acts of the directors cannot be questioned, collaterally, on the grounds of irregularity in giving the notice." And the supreme court in deciding that case say, (p. 250:) "The statute provides that as

soon as 10 per centum on the capital stock shall be subscribed, the persons named in the certificate of incorporation, or any three of them, may give notice for the stockholders to meet for the purpose of choosing directors. But we do not think it indispensable to an election that the notice should be given by the persons named. Suppose they should all die before the time arrived for giving the notice, or any of the many contingencies should occur which would prevent their action, could not an election be had? If the necessary amount of stock has been obtained, and, at a meeting of the stockholders for the purpose, they elect directors, the validity of their acts cannot be questioned, collaterally, on account of the irregularity in their election. The statute in regard to the notice is directory."

And in Field on Corporations, 229: "We have already alluded to the fact that the right to notice of a corporate meeting may be waived. If all the members assemble at any meeting, and it proceeds to business, this is a waiver of want of notice, and the action of the body is not affected thereby." Also, Brice, Ultra Vires, 300; Potter on Corporations, 425.

· Now, as against this, I am referred to Angell & Ames on Corporations, 495, which says: "If the members be duly assembled, they may unanimously agree to waive the necessity of notice, and proceed to business; but if any one person, having a right to vote, is absent or refuses his consent, all extraordinary proceedings are illegal, and, if the charter requires a special notice, it cannot be dispensed with, even by unanimous consent." There, the learned counsel for the plaintiff says, the distinction is clearly drawn between a case where the act of incorporation requires a special notice to be given, and in such where it can be dispensed with. The only case referred to in support of that authority is the case of *Rex v. Theodorick*, 8 East, 543, and that case does not support the doctrine of the text of Mr. Angell. "Where the whole corporation are summoned for the particular purpose of receiving the resignation of a common council, where all present consent, may, at the same time, without any particular summons to them for that purpose in their select capacity, proceed to

the election of a common council in the place of the other resigned." There is *dicta* in this which would seem to support Mr. Angell's view of the matter; but, I take it, with the authority of Field and Brice and Potter, each one of them without qualification, and of the supreme court of the state of Ohio, that the requirement of notice, whether in the certificate of incorporation or by-law, may be waived, that the weight of authority is against the doctrine of Angell & Ames.

If, therefore, you find that each one of the parties who owns stock in this corporation was present and participated in this meeting, they were bound by the action of the meeting; and the company itself cannot deny the legality of that action on the ground that no notice was given of the meeting, for the purposes of the law were fully accomplished by the parties being either present or represented without any notice at all.

You will bear in mind that two of these subscriptions of stock stand in the name of companies—Damarin & Co. and Bell & Co. representing two portions of these certificates of stock; and it is said by the plaintiff that the action of the meeting was invalid, even if it were lawful without the notice, for the reason that all of the parties owning stock, or to be affected by such action, were not present. It is not claimed by anybody that all of the members composing the firm of Damarin & Co. were at the meeting, nor is it claimed by anybody that all of the members composing the firm of R. Bell & Co. were at the meeting; and if the separate members of these two firms, in this transaction, are to be treated as separate and distinct owners of an aliquot part of the stock, which existed in their name, as a matter of course, the meeting would not be binding, because all the parties were not there to participate.

This leads us to consider whether it was necessary for each one of the members composing these two firms to be there and participate in the deliberations of that meeting in order to making it binding upon the firms. It is admitted that one of the members of the firm of Damarin & Co. was at the meeting. It is a general proposition of law that the act of one

partner in and about the business of a firm is binding upon each and every member of that firm, and it is another general proposition of law that notice to one of the partners in relation to matters which are connected with the business of the firm is notice to all of them. I say to you that one partner of a firm, which may own stock in a corporation as a part of the assets of the firm which they have acquired in the regular business of the firm, has the power to represent that stock in all matters which relate to the stock in the usual management of the business of the firm of which he is a member. About this proposition there can be no doubt, and it is wholly unnecessary for me to refer to authorities upon the question.

And so with the question of notice. If notice is given to one of the partners of a firm of that which is to occur in relation to the business of the firm in its legitimate or ordinary business transactions, that is notice to all the members of the firm, and they are bound by it. And so one member of the firm, if he has power to act in regard to the meetings of this corporation, and to act for his firm in the meetings, has the power to waive the necessity of the notice to the other members of the firm, and if he attends and takes part in the meetings of this corporation, and joins in the resolutions and acts of the corporation, the other members of the firm are estopped from denying that they had no individual notice of this meeting, or what was to be done at it.

It is claimed that one of the members of the firm of C. A. M. Damarin & Co. died before said meeting of April 14, 1874. That fact alone cannot affect the matter. The surviving partner has a right to the possession of the firm's personal property, and to control and wind up its affairs. It is also said that prior to that date a new partner was admitted into the firm. That might be the case, but unless this stock became part of the assets of the new firm it would not change the relation of the surviving partner of the old firm to the assets of the old firm, nor would it change the power which the surviving partner had over the assets of the old firm. If that new member, by virtue of his introduction into the com-

pany, obtained an interest in this stock by its being carried by them into the new company as an asset, then, as a matter of course, the same principles which I have already alluded to would apply to the one partner acting for the other partners in regard to it.    For, if the assets of the old company were carried forward into the new, then, as a matter of course, one partner would have the same right and the same power to act for the parties to vote this stock and waive notice that he would otherwise.    If he did not, by virtue of his introduction into this new company, become interested in this stock, the stock remained as an asset of the old company which had not yet been closed up, and which the surviving partner had a right to control and act for until the final and complete closing up of the old company.    There is no averment in the pleadings that the affairs of the old company were ever settled up, and until they were settled the surviving partner of the old firm was the sole manager of everything connected with that firm in regard to its settlement. However, if the proof in the case shows that prior to April 14, 1874, the business of the old firm had been completely wound up, and its assets distributed, the distributees then held their interests in severalty, and they would not be bound by the act of the surviving partner.    But unless the proof does show, and there is no averment in the replication that such was the fact, his right to control it continued up to the time that the settlement took place.

But it is said, on the part of the plaintiff, that although the surviving partner might have had the right to represent the company in these meetings and to waive the notice, that this proceeding cannot be supported or upheld, for the reason that there were creditors who existed at the time of the resolution of the fourteenth of April, 1874, and that as against the creditors no such proceeding could be upheld, for it was in violation of their rights; and it is claimed that there are existing creditors, also, which are subsequent to these proceedings of the fourteenth of April, 1874.    To this it is replied by the defendant that all the debts which existed, or which exist now, are the debts due and owing to the persons who

were stockholders, and who entered into this arrangement, and who passed this resolution; and that, therefore, all the debts which were contracted and accrued subsequent to that period of time by them was with full knowledge of all that had been done by the company, and with full knowledge that this stock had been treated as paid-up stock and certificates issued, and that they cannot now turn round and say that that proceeding was void.

. And the same doctrine applies to that position of the defendants that I have somewhat elaborated in regard to the act of a partner. If these debts were contracted by these parties, who were the owners of this stock, and who participated in the meetings and who had full knowledge of the fact that that stock by this action had been treated as paid-up stock, they have no right to come into this court and say that they will now treat that as absolutely void which they themselves had agreed to, and which they knew existed at the time they made the debts. In the case, however, there are partners, and the same doctrine as to notice would apply as would apply in the case that I spoke of before. If one of the partners of the firm engaged in this transaction, and passed this resolution and accepted for his firm a certificate for stock paid up, the notice of the fact to him would be notice to all the members of the firm of the condition of the stock.

But it is said there are debts which existed prior to that time which have not been paid, and that is a more difficult question in one aspect of it than the other. As against existing debts this transaction would not be binding. But I have great doubt whether or not even in that case the parties would not be bound to go into a court of equity, take the part of a creditor, and seek their remedy against all these parties and have a full settlement of everything connected with it. But for the purposes of this case I will say to you that if the debts existing at the time of this arrangement of the fourteenth of April have not been paid and still exist, that in this case as against these debts the proceedings would not be binding.

It is claimed on the part of the plaintiff, and it is admitted

on the part of the defendants, that there were debts existing at the time of this arrangement. It is claimed on the part of the plaintiff that these debts have never been paid.

The plaintiff claims that there is a debt owing to Bell of $500. The company have never recognized this as a debt against it, and the company have the right in a proceeding brought directly by Bell against them to dispute that claim. If he presented a claim and it was not allowed, we can hardly go into the examination and investigation of the rights of the parties as between Bell and the company in this particular case.

It is admitted that there were debts then due Damarin & Co. The defendants claim that these debts have since been paid, but admit there is now due a larger amount of indebtedness to them than was in existence at that time. The plaintiff claims that the original indebtedness has never been satisfied. If the indebtedness to Damarin & Co., which existed at that time, has been fully paid, then this action, in so far as the indebtedness to them is concerned, must fail; for as to the indebtedness subsequently contracted the transaction of April 14, 1874, must be held binding.

It is claimed that L. C. Damarin was the financial agent of this company. He was the business manager, and paid into the company all that was paid in, and received from the company all the proceeds of the sales of stock which were made, and he was the financial agent of the company. The law is this: Where there is a running account between parties, and the debtor pays, he has the right at the time he makes the payment to say to which one of the items contained in this running account this credit shall be applied. If he fails to do so, then the creditor, when he receives the money, has a right to make the application. If the creditor, when he receives the money, fails to make the application of the payment to any particular item of indebtedness, then the law applies this payment to the liquidation of the first debt which existed, or the first item which existed.

Now, if L. C. Damarin, after this resolution was passed, although the financial manager of the company, advanced

money and received the proceeds of the sales of the property, and gave them credit upon their books in a running account as from time to time he received it, and made charges therein as from time to time he advanced it, without applying the receipt in payment of any particular item of the account, the law says that the first money which he received shall be applied to the payment of the first debt which existed. And if these payments applied in that way equal the debt which existed on the fourteenth day of April, the corporation in this case has no right, upon the fact that it was in violation of the rights of the creditor, to maintain this action. The question, whether he did receive sufficient payments to do so, is for you to determine from the evidence.