## Tunis et al. *v.* Hestonville, Mantua & Fairmount Pass. R. R. Co. et al., Appellants.

[Marked to be reported.]

*Corporation—Supervision of, by court of equity—Election—Appointment of master—Act of June 16, 1836.*

Under the act of June 16, 1836, § 13, the courts of this commonwealth have the jurisdiction and powers of a court of chancery, so far as relates to the supervision and control of all corporations other than those of a municipal character. This power includes that of supervising and controlling the election of directors, whenever it is made to appear that, by means of fraud, violence, or other unlawful conduct on the part of the corporators, a fair and honest election cannot be held. Under the equity rules, the court may appoint a master, pro hac vice, in any particular case.

*Stock held by executors—Difference of opinion as to how it should be voted.*

At a corporate election each vote must be cast in person or by proxy; and the right to vote cannot be separated from the ownership without the consent of the legal owner; therefore, where stock is held by executors who differ as to how it should be voted, it cannot be voted at all.

*Proxy—Provision in will as to.*

Where the testator directed that certain stock should be voted as his son should direct and appoint, and that his executors should give a proxy or authority to vote said stock as the son may desire to vote it, the son being one of the executors: *Held*, that not having received such a proxy or authority, the son could not vote the stock in the face of a dissent by his coexecutors. Whether or not he could compel his coexecutors to give him such a proxy or authority, not decided.

Argued April 7, 1892. Appeal, No. 432, Jan. T., 1892, by defendants, the Hestonville, Mantua & Fairmount Passenger Railroad Company, Charles H. Lafferty and others, from decree of C. P. No. 1, Phila. Co., Dec. T., 1891, No. 399, dismissing the exceptions to and confirming report of master, etc.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Bill in equity for the appointment of a master to preside at the annual meeting of the Hestonville, Mantua & Fairmount Passenger Railroad Company, and to supervise the election for president and directors.

The material allegations in the bill sufficiently appear in the opinion of the Supreme Court.    No answer was filed; but the court below heard the case upon affidavits and counter affidavits, and entered the following decree:

"And now, to wit, this second day of January, A. D. 1892, after argument it is ordered by the court that Angelo T. Freedley, Esq., shall be appointed master, and he is directed at the time and place appointed for the annual meeting of the stockholders of the Hestonville, Mantua & Fairmount Passenger Railroad Company to call the meeting to order, to preside thereat during its session, and secure the admission of voters to said meeting.    Immediately after the organization of said meeting the judges of election shall proceed, under the supervision and control of said master, to hold an election for a president and five directors of the said railroad company, and at the said meeting the said judges shall receive and count the votes of all the persons entitled to vote at said election in person or by proxy.    In the event of any vote being challenged, the master and judges of election shall permit any stockholder or his counsel to examine any proxy, the stock list, certificate book, stock ledger, or any other book or paper relating to said vote, and the said master may take such testimony thereon as he deems pertinent to the question upon said vote.    And the decision of the master as to the propriety of counting said vote shall be then final.

" Said master shall make report to the court of the proceedings of said meeting, and the count of votes as hereinbefore directed to be taken.    The master shall make report to the court of the several objections to the vote of any stockholder, the facts thereof, the evidence taken concerning the same, and the decision of the master thereon.    If a motion shall be made to adjourn the meeting or to postpone the election, a vote shall be taken thereon, and if it shall appear to the master, having due regard to the rights and convenience of the stockholders present desirous of voting, that said election cannot be completed upon the day of said meeting and that said motion has

received a majority of the votes of the stockholders voting, said motion shall be declared to have prevailed, and he is authorized to adjourn said meeting to the same place not more than forty-eight hours thereafter.

"If the president and directors of said railroad shall be prepared and desirous to exhibit to the stockholders present a statement of the affairs and proceedings of the company for the preceding year, as provided in the charter, such statement shall be made either before or after the election, as a majority of the stockholders present shall direct." [1]

The master reported that the meeting was held in an orderly manner without disturbance of any kind; that there were two opposing tickets for president and directors, one the "Lafferty" ticket, and the other, the "Verner" ticket; and, among other things, as follows:

"Charles H. Lafferty claimed to vote upon 6,900 shares of stock belonging to the estate of Charles Lafferty, deceased, and tendered a ballot to the judges of election to that effect. This ballot was desired to be voted for the Lafferty ticket.

"The vote was challenged by Mr. Martin and others.

"Grounds of objection.—The objections were that the said Charles H. Lafferty was but one of three executors and trustees of the estate of Charles Lafferty, deceased, and that his coexecutors and trustees demanded that the stock should be voted for the opposing candidates, viz.: for the 'Verner' ticket, and tendered their ballot to that effect; and, further, that certain of the cestuis que trust had also objected to their permitting the said Charles H. Lafferty to solely vote this stock.

"Testimony was taken and appears in the stenographic report of the proceedings returned herewith, and from this evidence I report the following:

"Facts of the case.—Charles Lafferty died on October 27, 1885, leaving his last will and testament duly proved and registered in Philadelphia county, wherein he bequeathed all his stock of the corporation defendant to three executors and trustees under certain active trusts therein enumerated, which are still subsisting. He further directed that the executors and trustees should always be three in number. The present executors and trustees are Charles H. Lafferty, Rose E. Lafferty and P. J. Corcoran.

"By a codicil to his will dated May 13, 1885, the testator provided as follows:

" ' I do hereby authorize and direct that all the stock held by me in the Race and Vine Street, Arch Street and Hestonville, Mantua and Fairmount Passenger Railway Company shall be voted at all elections of said companies as my son Charles Lafferty shall direct and appoint, and my executors are directed to give a proxy or authority to vote said stock as he may desire to vote the same.'

" Mr. C. H. Lafferty demanded that the other two coexecutors and trustees should give him the proxy mentioned in the codicil, but the latter declined so to do, and protested against the right of Charles H. Lafferty to solely vote this stock. Certain cestuis que trust, also in writing, notified these two executors and trustees not to give this proxy. The two executors and trustees also claimed that being a majority in number they themselves were entitled to vote the said stock, and they desired to vote the same for the Verner ticket.

" The stock stands on the books of the company as follows:

Charles Lafferty (the decedent)  . . . . 2,900 shares.
Estate of Charles Lafferty . . . . . . 4,000    "

" The judges of election announced that unless otherwise instructed by the master they would receive the ballot tendered by Charles H. Lafferty and count it as he requested. If this ballot should be received and counted as desired by Mr. Charles H. Lafferty, it would elect the Lafferty ticket. The question was earnestly and ably argued by counsel.

" Decision of the master.—The master sustained the objection, and directed the judges of election to reject the ballot. The grounds of the decision were these:

" The legal owners of the stock were the executors and trustees, viz.: Charles H. Lafferty, Rose E. Lafferty and P. J. Corcoran. They differed as to voting and each demanded to exercise their franchise rights as legal owners of the stock. The undoubted rule in this country is that where joint owners of corporate shares differ as to the vote to be cast, the stock cannot be voted upon, whether such joint owners be individuals, partners or fiduciaries: Re Pioneer Paper Co., 36 Howard Prac. 112.

" The master does not consider that this rule is affected by the codicil, for

" 1. At a corporate election, each vote cast and counted
must be so cast in person or by proxy. The codicil is not self-
executing, and cannot be treated as a proxy as to dissenting
owners. It is neither a proxy in form or in substance. In
fact, it could not of itself operate as a proxy, for a proxy can
only be given by the owner; and at the time the codicil went
into effect the testator's death had terminated his ownership.
Moreover, under the act of 1849, there cannot be a perpetual
proxy. Such a proxy must be executed within three months
of the election. And the codicil, so far from purporting to be
self-executing, distinctly provides that its provisions shall be
carried out by a proxy which the executors and trustees are
directed to give, and to effect this Mr. C. H. Lafferty demand-
ed that his coexecutors and trustees should give him this proxy.
They declined to do so. Neither the judges of election nor
the master can, at a corporate election, compel the other execu-
tors and trustees to give this proxy. This proxy must be ob-
tained by appropriate proceedings before the proper tribunal,
and if a proper case is presented, jurisdiction exists to compel
the execution of such paper (see 2 Beach on Corporations, sec-
tion 855, p. 1346, n. 3). Therefore the case presented to the
judges of election seems to be simply that two joint owners de-
sire to vote certain stock in one way, and the third joint owner
desires to vote it in another way, claiming that under the cod-
icil a majority in number should be treated as having executed
the paper which the testator requested by said codicil. But the
facts are that the two objecting fiduciaries have not executed
such paper; that they decline to do so; that they themselves
claim to vote the stock in a different manner; and in this pro-
ceeding it would seem clear that the judges of election cannot
treat that as done which is not done, especially where no steps
have been taken to compel the execution of such proxy.

" 2. If, however, the codicil is self-executing, and it is neces-
sary to determine the question of its validity in this proceeding,
the master is of opinion that it is not capable of enforcement
against the two dissenting trustees. The effect of the will is
that the testator vests the legal ownership of the shares in
three executors and trustees (and requires that the trustees
shall always be three in number), and deprives two of those
three of the franchise connected with the ownership of the

stock. As a general rule, the right of voting follows the right of ownership, and cannot be validly separated therefrom against the will of the legal owner, and attempts so to do are usually as invalid as would be conditions in general restraint of trade, or against alienation in conveyances in fee. No authority was produced to the master authorizing such a limitation upon legal ownership as that attempted by this codicil. On the contrary, the decisions tend to the contrary view: Vanderbilt v. Bennett, 6 Pa. County Ct. Repts., 193, and cases therein cited; Shelmerdine v. Welsh, 47 Leg. Int. 26.

" The cases wherein the separation of the franchise from the ownership has been sustained have been where the severance was by the agreement of all parties in interest. This is the foundation of the decisions sustaining voting trusts: 2 Beach on Corporations, section 855 and notes.

" In those cases the voting power was conferred by the voluntary act of the owner—the stock was transferred and stood upon the corporate books in the name of the voter, and the proceeding was analogous to a proxy, or to a pledge with the stock transferred into the name of the pledgee. But in the present case the separation of the ownership from the franchise is made by one who, at the time the separation takes place, had by his death ceased to be the owner of the stock, and the stock itself is not transferred into the name of the party who solely claims the right to vote, but the legal ownership upon the books of the corporation remains in the estate, viz., in the three executors and trustees. It is true that the sole right of franchise is conferred upon an owner and not upon a stranger to the estate, and it was argued that as long as the voting power was vested in an owner he need not be the only owner. But while this result may be sustained when it occurs from the voluntary act of all parties interested, it is equally true that in the present case two joint owners are without their volition or consent deprived of their franchise rights. As to them the testator has attempted to separate the right of ownership from the right of franchise. They are deprived of one of the attributes of stock ownership, viz., of selecting agents to counsel and aid them in the prudent management of the property: Fisher v. Bush, 35 Hun. 644.

" Nor is the argument advanced by asserting that if the trus-

tees are dissatisfied they can resign their trust; for the testator provides that the number of trustees shall always be three and provides a method of appointing new trustees, and hence, each incoming trustee enters the trust burdened with the ownership of an illegal investment and deprived of the control of it.

" Upon motives of policy and under the authorities it seems clear that the testator could not have conveyed the stock directly to one of his distributees and have directed that the voting power thereon should only be exercised by a third person. It would seem equally clear that he could not have bequeathed it to two or more trustees for his distributees and have also directed that the voting power should be solely exercised by some third person.   And there would seem to be no difference in principle because the third person is appointed a cotrustee. Any other construction imposes upon the two trustees the legal responsibilities which might arise from holding this stock, and deprives them of their only method of controlling a management which might create that liability.   The trustees may by consent permit one of their number to cast their joint ballot, but when they elect to exercise the power themselves I do not think the law will permit them to be deprived of that right.

" In this view it is not necessary to decide the question which was argued as to the right of Mr. C. H. Lafferty to vote for himself under the power claimed to be conferred by the codicil."

The exceptions filed to the master's report by the defendants all related to the 6,900 votes by Charles H. Lafferty in favor of the Lafferty ticket, which the master directed the judges of election to reject.   The master reported against the exceptions, which were afterwards dismissed and the report confirmed, the court, by ALLISON, P. J., delivering the following oral opinion:

" The master was, we think, clearly right, in rejecting the offers to vote upon the stock belonging to the estate of Charles Lafferty for the reasons stated in his report.   The voting title of the stock was defective, because, upon the offer of Charles H. Lafferty to vote upon it, one of the essential elements imposed as a qualification to the exercise of the right by him under the will of his father was wanting.   There was no proxy

or authority such as is required to be given by the coexecutors
and trustees.

" The offer made is analogous to an offer to vote at any elec-
tion authorized by law, where the person claiming the right to
vote must show that his title is good in all essential particulars.
If wanting in respect to age, residence or payment of taxes, his
offer must fail because all the legal requirements must be pos-
sessed ; if wanting in any one of these qualifications, a vote
cannot be properly received.

" Charles H. Lafferty is only one of three executors and
trustees in whom the title to the stock vests under the will of
his father.

" The master in rejecting this offer places his decision on the
ground that where joint owners of corporate stock differ, as to
the vote to be cast, the stock cannot be voted upon.   And that
at a corporate election each vote cast must be in person or by
proxy.   That the codicil to the will giving to Charles H. Laf-
ferty the exclusive right to vote the stock being coupled with
a condition which had not been fulfilled, the vote under this
offer could not be properly received.   With this conclusion of
the master we are in full agreement, for the reason already in
substance stated, that the proxy or authority to exercise the
voting power at this election had not been given.

" It does not signify that the coexecutors and trustees were
directed to execute what is termed a proxy or authority.   Upon
neglect or refusal to furnish the required proxy, no measures
were taken to obtain by any process of law that which was
essential to the casting of the vote by him and without which
his right to cast the vote upon this stock was vitally defective.

" This is apart from the question as to whether the testator
could, in effect, by a clause like the one provided for in the
codicil, give a valid, perpetual power of attorney to his son,
Charles H.

" The master holds that under the act of 1849, referred to in
his report, there cannot be a perpetual proxy, which act re-
quires that a proxy to vote on corporation stock must be exe-
cuted within three months of the election.   He is also of the
opinion that such an authority is not enforceable against the
right of the two dissenting trustees, because the effect of this
provision in the codicil is that the legal ownership of the shares
is vested in the three executors and trustees.

" That, having vested a joint ownership in three persons, he cannot take from either of them one of the essential elements of such ownership.

" We think that these conclusions of the master are well founded, but it is not necessary to place our affirmance of his report on these grounds. We think that it is a sufficient justification of his rejection of this offer that Charles H. Lafferty's title was not a perfect one, and of this he has no just ground for complaint, having apparently acquiesced in the refusal of his cotrustees to make his title a good one, which he well knew was required by the testator as an essential requisite to the exercise of his voting power upon the stock.

" Upon the questions raised on the argument of the exceptions as to the power of the court to appoint a master to conduct the election and giving to him the authority to decide on the acceptance or rejection of offers to vote. Upon settling the form of decree, this point was fully considered.

" Unless the master was clothed with this power his appointment would have been of no practical value. Under the law we are given the power of supervision and control of corporations other than municipal corporations. Corporate elections cannot be supervised and controlled by the court, except by the appointment of an officer, to do in our name and authority that which, under the statute, we are empowered to do by ourselves. This action is not final, it comes back to the court for review—for approval or disapproval, and it is the final decree of the court which determines the extent of the control and supervision which may be lawfully exercised over a corporate election.

" The necessity for placing the offers to vote under and subject to the master's decision in this case was vested mainly upon the uncontradicted averments of the bill, that at the preceding election, disorder and violence had to some extent existed, and that judges had been appointed by the directors of the corporation to conduct the election; that this was in effect an appointment by Charles H. Lafferty to pass on the question of his right to vote upon the stock of the estate, upon the decision of which the election would probably turn. It seemed to us, that it was necessary that we should exercise such a control of this election as would secure orderly and properly conducted

proceedings and an impartial arbiter, to pass on such questions as might be raised as to the right of stockholders to vote.

" The same questions which gave rise to the disorders of the preceding year, it was apparent, would arise at the election of the present year. Among other serious allegations were those which charged that at the last election, the stock list and stock books were retained in the possession of the defendants, and that examination of these documents had been denied to members of the corporation, who had the right to their production and examination at said election.

" The objection to the right of the court to interfere by injunction in the holding of this election, is met by the simple statement that no injunction was granted.

" The only prayers for injunction are to restrain defendants from preventing the stockholders having access to the stock ledger and stock books, and also to prevent their excluding any stockholders from the polls at the time of the election. Even this much was not done.

" The exceptions are dismissed and the report of the master is confirmed."

Besides dismissing the exceptions, the court decreed that the candidates on the Lafferty ticket be enjoined from exercising the office of president and directors, and from interfering with William Verner as president and his board; and that they deliver up the books and papers, surrender all cash and transfer all bank accounts, etc.; " the defendants agreeing that the bill shall be treated as amended by inserting therein averments of the facts appearing upon the report of the master, and of a threat by the defendants to interfere with William Verner and his associates in the performance of their duties as president and directors, and praying for an injunction against such interference."

*Errors assigned* were (1) the making of the original order, as above, quoting it; (2) confirming the master's report and dismissing the exceptions thereto; (3) making the last decree, quoting it; (4) "granting the said special injunction;" (5) " making the said interlocutory mandatory order."

*George L. Crawford* and *Samuel Gustine Thompson*, for appellant.

Only in cases of necessity will courts of equity interfere with the election of officers of a private corporation ; quo warranto is the proper remedy : Cook on Stockholders, § 614 ; N. E. Co. v. Phillips, 141 Mass. 535 ; Owen v. Whitaker, 20 N. J. Eq. 122 ; James L. High in 3 S. Law Rev. 211 ; Camden v. Elkins, 37 N. J. Eq. 273 ; Nolde v. Madlem, 4 Lanc. Law Rev. 351 ; High on Injunctions, §§ 781, 789 ; Hilliard on Injunctions, 483 ; Commonwealth v. Graham, 64 Pa. 341.    The only ground for appointment of master or controling election is fraud or irreparable mischief : Cook on Stockholders, § 614.    Our courts only have the power of an English court of chancery in relation to the supervision and control of corporations : Commonwealth v. Bank, 3 W. & S. 193.

Under the act of 1849, the judges of election take an oath ; no court without fraud or improper conduct would attempt to control them in the performance of their sworn duty : Haight v. Day, 1 Johnson Ch. 19 ; Commonwealth v. Perkins, 7 Pa. 42 ; Commonwealth v. Commissioners, 5 Rawle, 75 ; High on Extraordinary Legal Remedies, § 677.

The codicil gives Charles H. Lafferty the right to vote the stock in question : Vanderbilt v. Bennett, 6 Pa. Co. C. 193 ; Ervin v. Phila. and Reading & R. R. Co., 7 Railway and Corporation Journal, 87 ; Beach on Private Corporations, § 606 ; Fesmire v. Shannon, 143 Pa. 201.

If this court deems the rejection of Charles H. Lafferty's vote on this stock wrong, they should directly declare his ticket elected : In re Cape May and D. B. N. Co., 16 At. Rep. 191 ; act of May 20, 1891, P. L. 101.

The remark of Lord HARDWICKE in Owen v. Owen, 1 Atkyns, 495, is not law ; Williams on Executors, 251 and note 9 ; 7 Am. and Eng. Enc. of law, 1801, § 402 ; Hill v. Tucker, 13 Howard, 466.

*John G. Johnson* and *Mayer Sulzberger, J. Willis Martin, William Henry Lex* and *R. P. White* with them, for appellees.— The discretion of the lower court in granting the preliminary injunction is the only matter now to be considered : Hoffman's Appeal, 10 W. N. C. 401 ; Sheaffer and Heckscher's Appeals, 100 Pa. 379.    Appellants have failed to print the evidence and the discretion of the lower court should not be criticised

in its absence : Brindle v. Brindle, 50 Pa. 387 ; Paxson's Appeal, 106 Pa. 429 ; Scranton Gas & Water Co. v. Northern Coal & Iron Company, 145 Pa. 21. President Verner and his directors were in actual possession and the last decree was made to protect them : Baptist Congregation v. Scannel, 3 Gr. 48 ; Ewing v. Thompson, 43 Pa. 372 ; Kerr v. Trego, 47 Pa. 292. The injunction is mandatory only so far as necessary to maintain the status quo : Whiteman v. Fayette Fuel Gas Company, 27 W. N. C. 205.

If the whole case is to be considered as upon final decree, the court plainly had jurisdiction : 3 Southern Law Rev. 212 ; Morawetz on Corp. § 270 ; Brightly's Eq. Jur. 49 ; Commonwealth v. Bank of Penn., 3 W. & S. 184 ; Baptist Congregation v. Scannel, 3 Gr. 48 ; Sarvers and others Ap., *81 Pa. 183 ; Gowen's Appeal, 10 W. N. C. 85. The general railroad law of Feb. 19, 1849, § 5, providing for the appointment of three stockholders to act as judges of election, does not repeal the act of June 16, 1836, § 5, vesting supervision of corporations in the courts of common pleas : Webb v. Ridgely, 38 Md. 364 ; Union Pass. Rwy. Co., 2 Penny. 434 ; Sandford v. Rwy. Co., 24 Pa. 378. Quo warranto is a curative, not a preventive remedy : 3 S. Law Rev. 225. Injunctions may be granted to restrain acts contrary to equity, as well as those contrary to law : Stockdale v. Ullery, 37 Pa. 486. The common law must be adequate : Bierbower's Appeal, 107 Pa. 14 ; Brush Electric Light Company's Appeal, 114 Pa. 574.

The court had power to appoint the master : Adams' Equity, 379 ; Equity Rules, § 62, rule 12 ; Gowen's Appeal, 10 W. N. C. 85 ; Anderson v. Fidelity Storage etc. Co., 26 W. N. C. 95.

The right to vote on stock cannot be separated from the ownership : Shelmerdine v. Welsh, 47 Leg. Int. 26 ; Vanderbilt v. Bennett, 9 Pa. Co. Ct. 193 ; Greenhood Pub. Pol. 502 ; Fisher v. Bush, 35 Hun, 641 ; Camden & Atlantic R. R. Co. v. Elkins, 37 N. J. Eq. 276 ; Woodruff v. Dubuque etc. Co., 30 Fed. Rep. 91 ; Wilson v. Proprietors of Central Bridge, 9 R. I. 590 ; Cape May and Del. Ba. Nav. Co., 16 At. Rep. 191 ; Hafer v. New York etc. R. R. Co., 14 Weekly Law Bull. (Ohio) Law Jour. 68. Under the act of 1849, each share entitles the holder to one vote.

The principle announced by Lord HARDWICK, in Owen v.

Owen., 1 Atk. 495, that as between executors there can be no division of interest or authority, has never been departed from.

Preliminary injunctions to restrain actions at corporate elections were issued in the cases of Hilles v. Parrish, 1 McCart, 380; Campbell v. Poultney, 6. Gill. & J. 94; Webb v. Ridgely, 38 Md. 364; Brown v. Pacific Mail S. S. Company, 5 Blatchf. C. C. 525.

The absence of disorder at the meeting in question was owing to the presence of the master.

OPINION BY MR. CHIEF JUSTICE PAXSON, April 25, 1892:

This was not, as contended by the learned counsel for the appellees, merely an appeal from the granting of a preliminary injunction.   It was an appeal from what was practically a final decree, made upon the report of the master, with all the facts before the court.   The injunction referred to was issued in aid of, and to enforce the decree of the court.   Hence, we need not refer to the cases in which we have held that, upon appeals from preliminary injunctions, we do not pass upon the merits, but decide merely whether the injunction shall be dissolved or remain until final hearing.

The appellees filed their bill in the court below, praying. the court to appoint a master to preside at the annual meeting of the Hestonville, Mantua & Fairmount Passenger R. R. Co., to be held in January, 1892, during its session, and to supervise the election for president and five directors thereof, and to make report thereof to the court.

Without going into detail, it is sufficient to say that the bill averred such acts of the appellants upon a previous election for directors as amounted to fraud; that the said meeting and election was conducted amid the greatest confusion and disorder, and resulted in personal violence.   The bill further avers that, "your orators verily believe that the same, or equally unlawful practices will be resorted to by the said defendants in the conduct of the election which will be held at the annual meeting of January, 1892, and that fraudulent means will be made to prevent the holding of a fair and just election, and that unless aid meeting and election are controlled by your honorable court, disorder, violence, and, possibly, bloodshed will occur, and your orators will be deprived of their right to vote at said election."

The court below, being satisfied that the averments of the bill were sustained by sufficient evidence, appointed Angelo T. Freedley, Esq., as master, to conduct said election in accordance with the prayer of the bill.

We are of opinion that the facts averred in the bill brought the case within the equitable jurisdiction of the court. By the 13th section of the act of June 16, 1836, the Supreme Court and the several courts of common pleas have the jurisdiction and powers of a court of chancery, so far as relates to the supervision and control of all corporations, other than those of a municipal character. This gives the court all the powers and jurisdiction of a court of chancery over such corporations, to be exercised in the ordinary mode in which a court of chancery acts. This power includes that of supervising and controlling the election of directors, whenever it is made to appear that, by means of fraud, violence, or other unlawful conduct on the part of a portion of the corporators, a fair and honest election cannot be held. This power has been exercised, and its exercise approved by this court in a number of instances. It is sufficient to refer, for present purposes, to Gowen's Ap., 10 W. N. 85, where the court of common pleas No. 2 appointed a master to preside at and supervise the proceedings of a meeting of the Philadelphia & Reading R. R. Co. The equity rules of this court provide that the court may appoint a master pro hac vice in any particular case. The law upon this subject is too well settled to require elaboration.

The principal contention in the case was over the right to vote the 6900 shares of stock belonging to the estate of Charles Lafferty, deceased. It appears from the report of the master that Charles H. Lafferty offered to vote this stock; that the vote was challenged by a stockholder, and rejected by the master. Charles H. Lafferty was one of the executors and trustees of the estate of Charles Lafferty, deceased. The rejected ballot was in favor of what is known as the Lafferty ticket. The other two executors demanded that this stock should be voted for the opposing candidates, viz, for the "Verner" ticket, and tendered their ballot to that effect. They further asserted that certain of the cestuis que trustents had also objected to their permitting the said Charles H. Lafferty to have the sole vote of this stock.

As the executors could not agree as to how the stock should be voted, the master declined to receive the vote from either party.

The master has found the facts elaborately, from which we condense the following: The will of Charles Lafferty, deceased, provides that the executors and trustees shall always be three in number. The present executors and trustees are Charles H. Lafferty, Rose E. Lafferty and F. J. Corcoran. By a codicil to his will he provides as follows: "I do hereby authorize and direct that all the stock held by me in the Race and Vine streets, Arch street, and Hestonville, Mantua & Fairmount Passenger R. R. Company, shall be voted at all elections of said companies, as my son, Charles Lafferty, shall direct and appoint, and my executors are directed to give a proxy or authority to vote said stock as he may desire to vote the same." The other two executors refused to give Charles H. Lafferty the proxy mentioned in the codicil, and protested, as before stated, against his right to so vote the stock. The judges of election announced that, unless otherwise instructed by the master, they would receive the ballot tendered by Charles H. Lafferty, and count it as he requested. If this ballot should be received and counted as desired by him, it would elect the Lafferty ticket. The master sustained the objection to this ballot, and directed the judges of election to reject it, which was accordingly done.

The master has given abundant reasons for his ruling. The principle may be briefly stated thus: At a corporate election, each vote cast and counted, must be so cast in person or by proxy. This is the law of the corporation, and the stock cannot be voted in any other way.

The codicil to Mr. Lafferty's will was not a proxy, and could not be treated as such as to objecting owners or stockholders. A proxy is an authority or power to do a certain thing; in this case a power to vote stock. Such power can only be given by the owner. It cannot, of course, be given by a dead man. Charles Lafferty no longer owns this stock, for the reason that his ownership terminated with his death. It then passed, by his will, to the executors and trustees before named, in trust for certain beneficiaries. The executors were entitled to vote this stock, because they held the legal title for the beneficial owners. If we concede that one executor could vote the stock,

in the absence of objection by his coexecutors, it is clear that he could not vote it against such objection. It is true, the codicil to the will directs two of his executors to give a proxy to Charles H. Lafferty, for the purpose of enabling him to vote his stock, but they did not give such proxy, nor does it appear that any attempt was made to enforce the provisions of the codicil by any legal proceeding. We are not called upon to say whether the dissenting executors could have been compelled to give the other executor a proxy. In point of fact, they did not give one, and, under the law of the corporation, the stock could not be voted. The testator could not, by a codicil to his will, affect the rights of other corporators. The codicil, so far as the corporation was concerned, had no legal effect.

What has been said in regard to Charles H. Lafferty's right applies, with equal force, to the attempt of the other two executors to vote the stock against his objection. The right of voting stock is inseparable from the right of ownership. The one follows as a sequence from the other, and the right to vote cannot be separated from the ownership, without the consent of the legal owner. It follows, logically, that one joint-owner of stock cannot vote it against the protest and objection of his co-owner.

It is not needed, for the purposes of this case, that we should speculate as to the right of a man to control, from his grave, the election of directors of a corporation. No such question is legitimately raised by this record. It will be time enough to decide this grave question when it arises.

The decree is affirmed, and the appeal dismissed, at the costs of the appellants.