Titusville Oil Exchange, John J. Carter, Pres., John Fertig, E. C. Hoag, B. F. Kraffert, Roger Sherman, E. T. Boberts, J. H. Caldwell, Joseph Seep, C. E. Martin, Sec'y, Petitioners, *v.* P. T. Witherop, M. B. McManus, M. Stewart, L. L. Shattuck, J. A. Dower, W. H. Wood, W. M. Henderson, Geo. A. Chase, L. E. Andrews, Second National Bank, E. O. Emerson, Taylor Tifft, C. B. Friedman, N. B. Barnsdall, J. P. Thomas, John Lammers, James Purtill, A. J. Thompson, Edgar Hale, W. P. Love, Loomis L. Shattuck and F. P. Brown, Respondents.

*Corporations—Equity powers of the court.*

Under the act of June 16, 1836, the courts have general and unlimited equity jurisdiction over corporations to be exercised in the ordinary manner in which a court of chancery acts, as the equity of the case may demand.

*Corporations—Equitable supervision of—Election to dissolve.*

The courts in the exercise of the equity powers conferred by statute may supervise the proceedings by which stockholders elect the course they will pursue in making choice of questions of policy involved in the adoption or rejection of a proposed measure, such as the dissolution of the corporation. It is manifest that in the absence of such judicial supervision great injustice might be done through irregularity, fraud or violence with no adequate remedy at law.

*Corporations—Dissolution—Methods necessary to be observed.*

In a matter so vital to a corporation as its dissolution it is not too much to say that the proceedings should be, at least, as deliberate and orderly and with as full opportunity for participation by the stockholders as on an election of officers, or on the question of an increase or reduction of capital stock or an issue of preferred stock.

With respect to notice while no more may be demanded than is fixed by the act of April 4, 1872, P. L. 40, in the absence of a definite period of notice, the shortest notice of election for any purpose directed by later statutes reasonably indicates the necessary minimum period.

With respect to proceedings of the judges the statutory requirements in relation to other elections apply with equal force.

The balloting must be conducted with all fairness so as to give every stockholder the opportunity of voting, to insure that only legal voters vote, that votes are fairly counted and that the record of the election shows the result of the ballot.

*Corporations—Dissolution—Practice, Eq.—Final decree.*

The act of April 9, 1856, P. L. 293, providing for applications to the courts of common pleas in matters of dissolution of corporations, must be understood as referring to the equity jurisdiction given to that court by the act of 1836; it follows that the petition must be regarded as a bill and the proceedings must be held to conform to the practice in equity.

A decree in such a case, although leaving out of view the matters alleged in the answer, is a final adjudication when it disposes of everything alleged in the petition and prayer.

Argued May 20, 1896. Appeal, No. 93, April T., 1896, by P. T. Witherop et al., from decree of C. P. Crawford County, Feb. T., 1896, No. 130, dissolving the Titusville Oil Exchange. Before RICE, P. J., WILLARD, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Petition of the Titusville Oil Exchange for permission to surrender all the powers contained in its charter and for a decree for the dissolution of the said corporation.

The facts are sufficiently disclosed by the petition, answer and decree of the court, which are set out in full, and by the opinion of the Superior Court.

### PETITION.

The petition of the Titusville Oil Exchange respectfully represents :

That it is a corporation of the first class, organized and duly

incorporated under the provisions of the General Corporation Act of Pennsylvania of April 29th, 1874, and the supplements thereto, with a capital stock of $40,000, divided into shares of the par value of $100 each.

That, at a meeting of the stockholders of the said corporation, duly convened on the first day of February, 1896, at the principal office and place of business of said corporation in the City of Titusville, County of Crawford and State of Pennsylvania, of which meeting due notice had been previously given, according to the Constitution and By-Laws, and as directed by law, it was resolved by a majority of the meeting of the corporators and members of the Titusville Oil Exchange to apply to this Honorable Court for a decree for the dissolution of the said corporation, your petitioner; and the President and Secretary and Board of Directors were instructed by said resolution to present a petition for such decree.

Wherefore, your petitioner, herewith presenting a full and true account of the President, Secretary and Treasurer and Board of Directors, of all their transactions with the said corporation, and showing to the Court that the prayer of its petition may be granted without prejudice to the public welfare, or the interests of the corporators and members, prays the Court that it will approve the accounts of the said Officers and Directors and for permission to surrender all the powers contained in its charter, and that the Court will make a decree for the dissolution of the said Corporation.

Your petitioner further prays that notice of this application be given by publication in " Titusville Herald " and " Advance Guard," two newspapers published in the County of Crawford, and of general circulation therein, in accordance with the Act of Assembly in such case made and provided, once a week for three weeks prior to the time fixed for hearing, the same being the County in which the principal operations of the corporation are conducted, and in which its principal office is located.

And your petitioner further sets forth that no taxes are due or alleged to be due to the Commonwealth of Pennsylvania, the Corporation being of the first class and not subject to taxation, as appears by the certificates of the Auditor General filed herewith.

And the time of hearing this application be fixed for the first Monday of March, 1896, at ten o'clock A. M.

JOHN FERTIG,              JOHN J. CARTER, Prest.,

B. F. KRAFFERT,           E. C. HOAG,

E. T. ROBERTS,            ROGER SHERMAN,

JOSEPH SEEP,              J. H. CALDWELL.

C. E. MARTIN, Secy.

### ANSWER TO THE PETITION FILED FOR DISSOLUTION OF THE SAID TITUSVILLE OIL EXCHANGE, A CORPORATION.

We, the undersigned corporators, and stockholders of the said corporation, in behalf of ourselves and such other stockholders, corporators and members of the said Titusville Oil Exchange as may hereafter wish to join us, for answer to the petition filed for dissolution of the said corporation, say:

First. That the resolution, alleged in the petition to have been passed February 1, 1896, by a majority of the meeting of the corporators and members of the Titusville Oil Exchange, for a decree for the dissolution of the said corporation, was not passed, as we believe and expect to be able to prove, by a majority of the votes of the stockholders, corporators and members of the said Oil Exchange legally entitled to vote at the said meeting upon the question; but the vote so taken and counted was illegal, fraudulent and void and not a correct and true expression of parties legally entitled to vote at the said meeting; that the said meeting was held in the spacious assembly room or hall of the Oil Exchange, and there was a large attendance of stock-holders, and other persons not stockholders, corporators or members of the Titusville Oil Exchange present; that the Chairman refused to put a motion made and seconded to have the vote taken by roll call, but appointed two tellers openly and avowedly in favor of the dissolution of said corporation (one of whom, as we are informed, is not a citizen of the United States) instead of appointing disinterested persons, or a teller from the number in favor of dissolution and one from those opposed thereto.   The said tellers so appointed distributed tickets or ballots through the audience, printed on one side " For dissolution " and no tickets or ballots either in blank, or printed " Against dissolution ;" that they passed the hat around through the audience and received ballots from those present,

and it would be impossible for the tellers or anyone to state whether all who voted were stockholders and corporators of the said corporation and members of the said Oil Exchange entitled to vote at said meeting or not. And we, the respondents, believe and expect to be able to prove that there were ballots or votes received and counted from persons not legally entitled by law and the by-laws of the Titusville Oil Exchange, the said corporation, to a vote at said meeting; and that the result as reported by the tellers, was unfair and unjust, and that a correct vote of those legally entitled to vote at the said meeting would, as we believe, have shown a majority against the passage of the said resolution.

Second. The business of the said corporation and the management of its property has for some time past been so conducted and managed, through the influence of the persons attempting to have the said corporation dissolved, as we believe and expect to be able to prove, in such a manner as to make as poor a financial showing as possible, for the purpose of depreciating the value of the stock in said corporation and purchasing it at greatly reduced value and for the purpose of getting a controlling interest, having the said corporation dissolved, its property sold at a time of great financial depression and bidding it in, in their own interest, at a low price and much less than it is really worth; that many of the stockholders subscribed and paid for their stock with the understanding and expectation that the Oil Exchange Building would be constructed and used for public or semi-public purposes; and we aver that the dissolution of the said corporation and the sale of its property would be prejudicial to the public welfare and the interest of its stockholders; that the account of the President, Secretary, Treasurer and Directors of the said corporation filed with the petition herein, and which the Court is asked to approve, is not a correct showing of the financial condition of the said corporation as it exists or ought to exist; that the Commercial Bank, John J. Carter and others have rooms leased in the building owned by the said corporation, and that the account does not show any rent collected or paid by them to the said corporation; and that if the business of the said corporation was properly managed, without any prejudicial influence from those seeking for its dissolution, that liberal annual dividends could be paid on the

capital stock of the said corporation, to the great advantage of all the stockholders, and they will be greatly prejudiced by the dissolution of the said corporation.

| | |
|---|---|
| P. T. WITHEROP, | E. O. EMERSON, |
| M. B. MCMANNUS, | TAYLOR TIFFT, |
| M. STEWART, | C. B. FRIEDMAN, |
| L. L. SHATTUCK, | LOAMIS L. SHATTUCK, |
| J. A. DOWER, | N. B. BARNSDALL, |
| W. H. WOOD, | J. P. THOMAS, |
| W. M. HENDERSON, | JOHN LAMMERS, |
| GEO. A. CHASE, | JAMES PURTILL, |
| THE SECOND NATIONAL BANK | A. J. THOMPSON, |
| OF TITUSVILLE, PA. | EDGAR HALE, |
| By W. O. DELONG, | W. P. LOVE, |
| Assistant Cashier. | F. P. BROWN, |
| L. E. ANDREWS, | |

### DECREE.

And now, to wit; the 9th day of March, 1896, the petition of the Titusville Oil Exchange corporation for a decree for the dissolution thereof having been duly presented, and proof having been made that notice of such application has been duly given by publication according to law, and it appearing by the proper certificates of the auditor general, filed, that all taxes payable and due the commonwealth of Pennsylvania have been paid, and it further appearing that the prayer of the said petition may be granted without prejudice to the public welfare or the interests of the corporators, it is ordered, adjudged and decreed that the said corporation be, and the same is hereby dissolved, and all and singular its powers, franchises and privileges be, and the same are hereby extinguished and determined: Provided that this decree shall go into effect upon filing a certified copy thereof, and recording the same in the office of the secretary of the commonwealth.

And it is further ordered, adjudged and decreed that the accounts of the directors and officers of the said corporation, herewith filed, be, and the same are hereby approved and confirmed. [1]

*Error assigned* was entry of the decree dissolving the Titusville Oil Exchange.

*Julius Byles*, with him *Eugene Mackey*, for appellant.—The only question in this case is, was the court right in entering the decree dissolving the Titusville Oil Exchange corporation.

The corporation was formed for the purpose of dealing in petroleum oil, has done a large business therein, amounting to many thousands of dollars annually; owns valuable real estate which cost about $60,000, from which it has received a large annual income, and has paid and can pay liberal dividends on its capital stock. The appellants are stockholders and interested. They allege in their answer filed in the case that the vote taken at the special meeting held February 1, 1896, to dissolve the corporation was illegal, fraudulent and void. The meeting was held in the spacious assembly room of the Exchange. There was a large attendance of stockholders and members of the Exchange, and persons not stockholders or members. A hat was passed around through the audience and ballots or tickets collected and counted in such manner that it was impossible to know whether those voting were legally entitled to vote at the meeting or not. No opportunity was afforded to challenge any vote. The result was announced by the tellers in favor of the resolution to dissolve, without any announcement of who voted, or the number of shares voted by any one. This manner of receiving a vote on an important question is, to say the least, open to the suspicion of unfairness and fraud. If the roll had been called and each one claiming the right to vote had stepped up and offered his ballot, it could then easily have been determined whether the votes cast were legal. The answer of appellants also states that the dissolution of the corporation and sale of its property will be prejudicial to the public welfare and the interest of its stockholders. These questions were before the court on the petition and answer, and should not have been settled and a decree granted dissolving the corporation without testimony as to the facts in controversy. Important interests were at stake and there should have been no questions about the legality of the vote.

Where a petition is presented by a corporation for its dissolution the court should be satisfied that the prayer of such petition can be granted without prejudice to the public welfare, or the interests of the corporators. If the contrary appear or the matter be doubtful the application should be refused: Credit Mobilier, 10 Phila. Rep. 2.

We respectfully submit that the court below was in error in granting the decree for dissolution without testimony upon the important questions raised by the answer of appellants.

*Roger Sherman*, for appellee.—This proceeding is under the act of April 9, 1856, P. L. 293. This act was construed in the case of Com. v. Slifer, 53 Pa. 71. The act of April 4, 1872, P. L. 40, defines the requisitions as to notice. The petition presented by the corporation in this case contains all the necessary allegations to give the court jurisdiction, and sets forth every fact required by the acts of 1856 and 1872. It is always competent for a majority of the stockholders of the corporation, such as this, to wind up its affairs: 5 Thompson on Corporations, sec. 6692; Treadwell v. Mfg. Co., 7 Gray (Mass), 393; People v. Holstein-Friesian Assn., 41 Hun, 439.

This decree was not a final decree: Riddell v. Harmony Fire Co., 8 Phila. 310. The final decree would be the last decree necessary to give the parties the full and entire benefit of the judgment: Snodgrass' App., 96 Pa. 420; Beebe v. Russell, 19 Howard, 285; Whiting v. Bank of U. S., 13 Peters, 15.

The answer is insufficient and does not deny the material allegations of the bill: Roach v. Summers, 20 Wall. 170; Black v. Halstead, 39 Pa. 64–71; Peck v. Jones, 70 Pa. 83; Reamer v. Bell, 79 Pa. 292; Blumenthal v. Whitaker, 170 Pa. 309–313; Lehman v. Jaquett, 5 W. N. C. 183; McCracken v. Presb. Church, 17 W. N. C. 204; Mathews v. Long, 3 W. N. C. 512; Marsh v. Marshall, 53 Pa. 396.

If fraud was intended to be alleged in paragraph 1 of the answer it should have been definitely and distinctly averred on knowledge or on information and belief, and facts stated to the court from which it could ascertain upon what such general charges were based: Marsh v. Marshall, 53 Pa. 396.

OPINION BY SMITH, J., October 19, 1896:

This proceeding was begun in the court of common pleas of Crawford county for the purpose of effecting a dissolution of the Titusville Oil Exchange, a corporation organized under the laws of Pennsylvania. A petition in the name of the Titusville Oil Exchange, signed by its officers and directors was presented to that court under the provisions of the act of April 9, 1856,

and its supplements, setting forth, in a general way, the exist-
ence of the conditions required by that act in order to secure
the benefit of its provisions.  It was averred, inter alia, that at
a duly convened meeting of the stock-holders of the corporation,
"it was resolved by a majority of the meeting of the corporators
of the Titusville Oil Exchange to apply" for a dissolution of
the corporation, and that a full and true account of the trans-
actions of the officers accompanied the petition, which the court
was asked to approve, and decree a dissolution.  An answer
was filed to this petition by other stockholders of the corpora-
tion denying that the petitioners were duly authorized to pro-
cure a dissolution, and asserting that the resolution to that effect
was not lawfully or regularly adopted at the meeting referred
to in the petition.  The court below, without hearing any evi-
dence as to the matters alleged in the answer, decreed a disso-
lution of the corporation.  From this decree an appeal has been
taken by the corporators opposed to the dissolution.

The question here is whether the court below properly exer-
cised its powers in the premises.

The act of June 16, 1836, section 13, provides that "The
several courts of common pleas shall have the jurisdiction and
powers of a court of chancery, so far as relates to . . . . the
supervision and control of corporations, other than those of a
municipal character, and unincorporated societies or associations
and partnerships."

In The Commonwealth v. Bank of Pennsylvania, 3 W. & S.
184, it was held that this act gave the courts "general and
unlimited" equity jurisdiction over corporations.  "This gives
the court all the powers and jurisdiction of a court of chancery
over corporations, to be exercised in the ordinary mode in which
a court of chancery acts, whether by bill, injunction, or other-
wise, as the equity of the case may require."—SERGEANT, J.
This view of the powers of the courts, and the mode of proceed-
ing, has repeatedly been affirmed: Sandford v. R. R. Co., 24
Pa. 378; Big Mountain Improvement Co.'s Appeal, 54 Pa. 361;
Baptist Congregation v. Scannell, 3 Grant, 48; Sarver's Appeal,
81 * Pa. 183; Tunis v. Pass. R. R. Co., 149 Pa. 70; and it has
never been qualified or questioned.

The equity jurisdiction thus given extends to the supervision
of corporate elections, even to the appointment of a master to

conduct an election: Gowen's Appeal, 10 W. N. C. 85; Baker's Appeal, 109 Pa. 461; Tunis v. Pass. R. R. Co., 149 Pa. 70. It does not, however, include the power to determine the validity of an election of directors; this can be adjudicated only at law, on a writ of quo warranto: Jenkins v. Baxter, 160 Pa. 199; Bedford Springs Co. v. McMeen, 161 Pa. 639.

But the writ of quo warranto is wholly inapplicable when the election is to make choice, not of a person, but of a policy,— to decide on the adoption or rejection of a proposed measure; for example, on the amendment or renewal of the corporate charter, the adoption or amendment of by-laws, the reduction or increase of capital stock, the issue of preferred stock, a change of the location of the principal office, of the time and place of meetings and elections, of the number of directors, of their terms of office, or the dissolution of the corporation. Unless the courts may, in the exercise of the equity powers conferred by the statute, supervise the proceedings by which the stockholders elect the course they will pursue with respect to these and similar matters, it is manifest that great injustice may be done, through irregularity, fraud or violence, with no adequate remedy at law.

There are certain statutory provisions regulating, in part, the choice of officers, and the decision on a proposed increase or reduction of the capital stock. But the acts of assembly are entirely silent as to the manner of conducting elections on other questions, and as to the mode of receiving and recording the votes cast at any election.

The supervision of corporate elections, on the points left unsettled by the legislature, is necessarily part of the duty with which the courts are charged in the exercise of the jurisdiction conferred by the statute. The aim of this supervision is to secure a free and full expression and an accurate record of the will of the stockholders on the subject of the election. For this purpose it is not necessary to lay down hard and fast rules of procedure. It is sufficient in the main to indicate guiding principles.

Upon a question so vital to the corporation as that of its dissolution, it is not too much to say that the proceedings should be, at least, as deliberate and orderly, and with as full an opportunity for participation by the stockholders, as on an election

of officers, or on the question of an increase or reduction of capital stock, or an issue of preferred stock. The most exacting of the statutory provisions relating to such elections are not too much to ask when the existence of the corporation is put at stake. With respect to the notice, no more may be demanded than is fixed by the act of April 4, 1872 (P. L. 40). But the requirement of that act—" publication in two papers in the county "—is indefinite as to the period of notice ; a literal compliance would permit the election on the day following publication. In the absence of direction on this point, in the act of 1872, the shortest notice of election for any purpose directed by later statutes reasonably indicates the minimum period with which this omission should be supplied. With respect to the proceedings of the judges, the statutory requirements in relation to other elections apply with equal force to an election to decide a question as important as that of dissolution. With respect to the balloting, it is manifest that it should be so conducted as to give every stockholder an opportunity of voting, to ascertain that every one who offers a vote is legally entitled to cast it, to challenge every vote which he may believe to be illegally offered, to see that the votes are fairly counted, and that the record of the election shows accurately the result of the ballot. To this end, the stockholders are entitled to free access to the books of the corporation, so far as may be necessary for the requisite information, particularly in relation to the ownership and transfer of stock. An election conducted in conformity with the principles thus indicated is reasonably calculated to insure an adequate expression of the views of the stockholders.

In the case before us, the petition shows a prima facie case requiring a decree of dissolution. Members of the corporation have, however, a clear right to show that the facts are otherwise than as set forth in the petition, and that, from irregularity, fraud or other cause, the election, as returned, failed to exhibit the purpose of a majority of the stockholders. This right is to be exercised by becoming parties to the proceeding, and laying before the court the grounds of objection.

The act of April 9, 1856 (P. L. 293), on which the proceeding is based, in providing for an application to the court of common pleas, must be understood as referring to the equity

jurisdiction given to that court in the supervision of corpora-
tions by the act of 1836. Though the petition was not ad-
dressed to the court, sitting in equity, it must be regarded as
a bill in equity, since the jurisdiction of the court is wholly in
equity, and the proceedings must be held to conform to the
practice in equity. The answer, though inartificially drawn,
discloses matters of substance, bringing into question the valid-
ity of the election; and it may be amended, if necessary, in
accordance with the equity rules. The cause must be viewed
as heard on bill and answer; and in this aspect, the answer,
which must be taken as true, alleged sufficient to bar the plain-
tiff's right to the decree prayed for. The plaintiff may by re-
plication raise an issue as to the allegations in the answer, and
thereupon the cause may come on for hearing upon evidence
pertinent to the issue.

The decree made by the court below, though leaving out of
view the matters alleged in the answer, was a final adjudication
of everything embraced in the petition and prayer. The sale
of the corporation property, to take place after the dissolution,
is a separate and independent proceeding.

The decree of the court below is reversed and a procedendo
awarded.