MARY G. SELLERS and MARIANNA SILLIMAN, on behalf of themselves and all other holders of 7% Cumulative Preferred Stock of Respondent, Joseph Bancroft & Sons Company, similarly situated,

*vs.*

JOSEPH BANCROFT & SONS COMPANY, a corporation organized and existing under the Laws of the State of Delaware.

*New Castle, Jan.* 31, 1941.

*Hugh M. Morris* and *Edwin D. Steel, Jr.,* for complainants and intervenors.

*Robert H. Richards, Jr.,* of the firm of Richards, Layton & Finger, and *Maurice Walk,* of Chicago, Ill., for defendant.

THE CHANCELLOR: This case is before this court on final hearing on an agreed statement of facts. It involves the validity of a purported amendment of the certificate of incorporation of the Joseph Bancroft & Sons Company, which is alleged to have been duly adopted at a stockholders' meeting held November 10, 1937. But the precise question to be determined is whether that amendment received the requisite vote of the 7% cumulative preferred stockholders, or whether it is invalid, at least as to stockholders of that class who failed or refused to vote their stock in its favor.

It appears from the agreed statement of facts and from the admitted allegations of the bill that the complainants are in that class, as Marianna Silliman caused the 50 shares of preferred stock owned by her to be voted against such amendment, and the 114 shares, owned by Mary G. Sellers, were not voted at all.

In determining the validity of the alleged 1937 amendment, it is necessary to consider the provisions of a prior charter amendment of June 29, 1926, and, also, to determine the validity of an alleged subsequent amendment of that provision at a stockholders' meeting held December 11, 1936. Some of the same questions were before the late Chancellor on demurrer to the complainants' bill, and were definitely decided by him; others, though perhaps not decided, were at least discussed in principle. See *Sellers, et al., v. Joseph Bancroft & Sons Co.*, 23 *Del. Ch.* 13, 2 *A.* 2d 108. Most of the material facts now before this court were set out in that opinion; though, for the sake of clarity, it will be necessary to repeat some of them.

The 7% cumulative preferred stock was issued by the defendant company in 1926, pursuant to the provisions of Article III of its certificate of incorporation, and the complainants purchased their stock at that time. It then had certain specified rights and privileges which the Chancellor set out in his opinion, with some particularity, in disposing of the demurrer; all of which were of a contractual nature, and appear in the statement of facts preceding this opinion.

*Section* 26 (§ 2058, *Rev. Code* 1935) of the *General Corporation Law* provides that amendments to certificates of incorporations, which "alter or change the preferences, special rights or powers given to any one or more classes of stock," must receive a majority vote of the particular class affected thereby. But *Section 5, sub-section* 11 of the same act (§ 2037, *Rev. Code* 1935) also provides:

"The Certificate of Incorporation may also contain provisions requiring for any corporate action the vote of a larger proportion of the stock or any class thereof than is required by this Chapter."

The majority rule provision of *Section* 26 may, therefore, be entirely supplanted by the inclusion of other and different provisions in a certificate of incorporation; and, pursuant to the provisions of *Section* 5, *sub-section* 11, by the amendment undeniably adopted June 29, 1926, Section 7 of Article III of the defendant's corporate charter provides:

"So long as any Preferred Stock shall remain outstanding, then without the affirmative vote or written consent of the holders of 75% of the shares of Preferred Stock at the time outstanding, the designations, preferences and voting powers of the Preferred Stock, and the restrictions and qualifications thereof, shall not be changed or altered; provided, however, that the par value, dividend rate and redemption price of the Preferred Stock, and the amount payable to the holders thereof in the event of the voluntary or involuntary liquidation, dissolution or winding up of the Corporation, shall not be reduced without the affirmative vote or written consent of the holders of one hundred per cent (100%) of the shares of Preferred Stock at the time outstanding."

The 1926 amendment, therefore, provides in substance:

1.  The designations, preferences and voting powers of the preferred stock shall not be changed or altered without the affirmative vote or written consent of the holders of 75% of the shares of that stock then outstanding.

2.  The par value, dividend rate and redemption price of the preferred stock, and the amount payable on liquidation, shall not be reduced without the affirmative vote or written consent of the holders of 100% of the shares of that stock then outstanding.

Article X of the certificate of incorporation of the Bancroft Company, also, provides:

"The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation, as from time to time amended, in the manner, now or hereafter prescribed by statute, and all rights of stockholders, directors and officers are subject to this reservation; subject, however, to the provisions of Article III hereof."

By an alleged amendment of Section 7 of Article III of the defendant's certificate of incorporation, which purports to have been regularly adopted at a stockholders' meet-

ing held December 11, 1936, the required voting percentages of the preferred stock, previously provided for, were reduced to 60% and 65% respectively; but no other changes in that certificate were then made, or attempted.

The agreed facts show that at that meeting only 15,045 shares of the 7% cumulative preferred stock, or approximately 55% of that issue, were voted in favor of the adoption of that amendment, and 8,090 shares, or approximately 35% thereof, were voted against it. Precisely the same facts were before the Chancellor at the argument on the demurrer, and he pointed out that the purported amendment affected the voting powers of the preferred stock and the contract rights of the holders thereof, and as it had not received the prescribed 75% affirmative vote, definitely required by Section 7 of Article III of the defendant's certificate of incorporation, it was void. *Sellers, et al., v. Joseph Bancroft & Sons Co.*, 23 *Del. Ch.* 13, 2 *A.* 2d 108. I am in entire accord with that conclusion and with the Chancellor's reasoning. This disposes of the defendant's contention that the alleged passage of the 1936 amendment by a mere majority vote was not inconsistent with the rights secured to the preferred stockholders by the provisions of the prior amendment of June 29, 1926. This conclusion has an important bearing on the decision of this case, and is not inconsistent with *Aldridge v. Franco-Wyoming Oil Co.*, 24 *Del. Ch.* 126, 7 *A.* 2d 753. The distinction is pointed out in the opinion of the court in the latter case.

At the subsequent stockholders' meeting held on November 10, 1936, a readjustment plan of the capital structure of the defendant company was, also, submitted for approval, and an amendment to its certificate of incorporation to carry out that plan was likewise proposed. The validity of this amendment is the precise question to be determined. By it, it was proposed to reclassify all of the outstanding preferred stock of the defendant company, held alike by assenters and non-assenters, into a newly created class of

preferred stock. If valid, it will affect the outstanding 7% cumulative preferred stock issued pursuant to the 1926' amendment in the following respects:

(1). The dividend rate will be reduced from 7% to 5%.

(2) The redemption price will be reduced from $110 to $105 per share, plus in each case dividends accumulated and unpaid at the date of redemption.

(3) The amount payable to the holders of the preferred stock upon voluntary dissolution and liquidation will be reduced from $110 to $105 per share, plus in each case dividends accumulated and unpaid at the time of dissolution.

Other ways in which the rights of the 7% cumulative preferred stockholders would be affected by this amendment, if valid, also appear in the statement of facts.

In considering whether these changes affect the contract rights of the non-assenting preferred stockholders, we must bear in mind that Section 7 of Article III, as originally drawn in 1926, was still a part of the corporate charter of the Bancroft Company in 1937. All of the purported changes in the capital structure of that company related to matters and things prohibited by the 1926 amendment, without a. 100% affirmative vote of the preferred stock. Under the agreed facts it cannot be contended that the 1937 amendment received that vote. The corporation claims, however, that the 100% provision was merely a voting power that could be changed at any time by a 75% affirmative vote of the preferred stock, pursuant to the preceding provision of Section 7 of Article III, and that such a vote was cast; that its corporate charter was amended accordingly, and that it will take effect when filed in the office of the Secretary of State. The Chancellor was not required to pass on either of these questions as the bill alleged and the demurrer admitted that the 1937 amend-

ment received less than a 75% affirmative vote of the preferred stock. On a final hearing, however, a somewhat different state of facts is presented. But in any aspect of the case, whether the amendment in question can be said to have received a 75% vote of the preferred stock depends on whether the 1,159 shares belonging to the estate of Joseph Bancroft, deceased, were legally voted in favor of it at the stockholders' meeting of November 10, 1937. The Wilmington Trust Company, a corporation of this state, and Elizabeth H. Bancroft, widow of Joseph Bancroft, deceased, are co-executors of his will. At that meeting the Wilmington Trust Company, purporting to act as one of such executors, voted the 1,159 shares of preferred stock in question in favor of the proposed charter amendment, but Mrs. Bancroft definitely refused to join in that action, and, through her counsel, vigorously protested against its adoption. At the same time, Mrs. Bancroft caused a statement, signed by her to that effect, to be read, which among other things stated that she had "refused to join with her co-executor in accepting it." The judges of election counted the shares as having been voted in favor of that amendment, but, in view of the objection registered by Mrs. Bancroft at that time, the vote was illegal and the ballot cast should not have been counted. This is clearly apparent when the governing principles are considered.

In the regular course of administration of the goods, chattels and other personal property of a deceased person, the rights and powers of co-executors or administrators are usually regarded as joint and entire, and in most cases the acts of one are binding on all. *Herbert, et al., v. Pigott,* 2 *Cr. & M.* 384, 149 *Eng. Repr.* 809; *Lank v. Horsey's Ex'rs.,* 4 *Har.* 457; *Highland v. Empire Nat. Bank,* 114 *W. Va.* 473, 172 *S. E.* 544; *In re Ringler & Co.,* 70 *Misc.* 576, 127 *N. Y. S.* 934; *Williams' Executors,* (11th Ed.) 708; 24 *C. J.* 1184. In other words, no matter how many co-executors or administrators there may be, they are ordinarily regarded in law as one person, and, in the absence of fraud,

the act of one in the regular course of administration of the personal estate of the deceased, is usually binding on all; and this is true though some do not participate in the particular matter or thing done but, on the contrary, are clearly opposed thereto. *Smith v. Everett,* 27 *Beav.* 446; *Williams on Ex'rs.,* (11th *Ed.*) 699, 708; 2 *Schouler on Wills, Ex'rs., Admrs.* 1426, 1427; see, also, *Herbert, et al., v. Pigott,* 2 *Cr. & M.* 384, 149 *Eng. Repr.* 809; *Lank v. Horsey's Ex'rs.,* 4 *Har.* 457. But the right of a co-executor or administrator to vote shares of corporate stock, having voting powers, and belonging to the estate of the decedent, is not an act done in the regular course of administration, and is, therefore, governed by somewhat different principles. Where shares of corporate stock are owned by two or more persons jointly, it seems that they may be voted at a shareholders' meeting by one of them, in the absence of any apparent objection by any other owner. *In re Pioneer Paper Co.,* 36 *How. Prac.,* (N. Y.) 111; *Kenton Furnace R. Co. v. McAlpin,* (C. C.) 5 *F.* 737; *Wiggins, et al., v. European, etc., Ry. Co.,* 29 *Fed. Cas.* 1165, *No.* 17,626; 5 *Fletcher Cyc. Corp.,* (*Per. Ed.*) 147; 14 *C. J.* 902; 18 *C. J. S. Corporations,* § 548, *page* 1247; see, also, *Tunis v. Hestonville R. Co.,* 149 *Pa.* 70, 24 *A.* 88, 15 *L. R. A.* 665; *Townsend v. Winburn,* 107 *Misc.* 443, 177 *N. Y. S.* 757.

In 5 *Fletcher, supra,* the author, in referring to the rights of joint owners, aptly said:

"The right to vote is in them jointly, and, in order that the shares may be voted, they must agree upon the vote."

The validity of a vote cast by one of several co-executors or administrators is governed by precisely the same principles. 5 *Fletch. Cyc. Corp.,* (*Per Ed.*) 147; 3 *Cook on Corp.,* 2147; *Highland v. Empire Nat. Bank,* 114 *W. Va.* 473, 172 *S. E.* 544; 18 *C. J. S., Corporations,* § 548, *page* 1247; see, also, *Tunis v. Hestonville R. Co.,* 149 *Pa.* 70, 24 *A.* 88, 15 *L. R. A.* 665; *Townsend v. Winburn,* 107 *Misc.* 443, 177 *N. Y. S.* 757; *Schmidt v. Mitchell,* 101 *Ky.* 570, 41 *S. W.* 929, 72 *Am. St. Rep.* 427.

Applying these principles to the facts, as already indicated, in view of the attitude taken by Mrs. Bancroft at the November 10th meeting, and her definite refusal to join with her co-executor in voting for the amendment offered, the Joseph Bancroft shares of preferred stock should not have been counted by the judges of election as having been voted in its favor. That being true, it is evident that the proposed amendment did not receive a 75% affirmative vote of the preferred stock, even if that would have been sufficient to amend the 100% provision of the charter.

Having reached this conclusion, it seems unnecessary to consider any other contentions made by the parties, including the question whether the proposed 1937 amendment, even if it had received an affirmative vote of 75% of the preferred stock, could be fairly regarded as an amendment of the earlier charter provision of 1926, or whether, in any aspect of the case, a more direct method would be required to effect that provision. See *Sellers, et al., v. Joseph Bancroft & Sons Co.*, 23 *Del. Ch.* 13, 2 *A.* 2d 108.

The purported charter amendment is, therefore, void as to the complainants, and a decree to that effect will be entered in accordance with this opinion.